WILLIAM WADDAMS, Appellant, *v.* ALVIN HUMPHREY *et al.*, Appellees.

APPEAL FROM STEPHENSON.

A debtor may sell his estate although he is in debt, provided he does it fairly, for a reasonable consideration, and without fraud.

A court will exercise a more liberal discretion in awarding new trials on feigned issues, than at law.

A divorced woman is not a good witness where her former husband is a party.

THIS bill states that, in September, A. D. 1851, complainants recovered a judgment in the Circuit Court of Stephenson county, Illinois, for $1,014.66, and costs taxed at $20.55, against David McAusland, who, with William Waddams, late father-in-law of said McAusland, are made defendants.

That, September 15, 1851, execution issued on said judgment against said David McAusland.

That, on or about December 8, 1851, the sheriff levied on N. W. ¼ of N. E. ¼, and S. W. ¼ of N. E. ¼, and N. W. ¼ of S. E. ¼ of Sec. 17, containing 120 acres; also E. ½ N. W. ¼, and 43 acres off the east side of E. ½ of S. W. ¼ of section 8, containing 123 acres; also S. E. ¼ of N. W. ¼ of section 7, containing 40 acres—all in town 28 N., of R. 6 East of 4th P. M., in Stephenson county, Illinois.

That on December 29th, 1851, said lands were sold by said sheriff by virtue of said execution, and were struck off to said complainants for $1,075.10, and the sheriff's certificate of purchase given to said complainants therefor.

That, June 15, 1853, the sheriff of Stephenson county made to said complainants a sheriff's deed of conveyance for said lands.

That on February 22nd, A. D. 1849, David McAusland had conveyed said lands to William Waddams, without adequate consideration, for the purpose of defrauding said complainants, and preventing them from collecting the aforesaid judgment— for which, bill states, said complainants had threatened to prosecute, and did prosecute said David McAusland.

That said deed (from McAusland to Waddams) was filed for record in the office of the clerk of the Circuit Court of Stephenson county, on the 14th of April, 1849.

That complainant, Sarah G. L. Reed—now Sarah G. L. Humphrey by marriage with Alvin Humphrey—commenced suit against said McAusland for the claim aforesaid, *i. e.*, the claim upon which said judgment was recovered as aforesaid, in Stephenson county Circuit Court, Illinois. The suit in Wisconsin

was dismissed for want of jurisdiction in the court, all of which was prior to McAusland's sale to Waddams, and of which Waddams had notice.

Bill further alleges, that complainant, Sarah G. L. Humphrey, while she was Sarah G. L. Reed, furnished to McAusland all the money wherewith to enter said lands from the United States, with the understanding that said McAusland should enter said lands in her name, and that part of the money included in said judgment is for the entry money so furnished as aforesaid.

That said McAusland did not enter said lands in the name of complainant, Sarah G. L., but entered them in his own name, and then, further to defraud said Sarah G. L., sold said lands to said Waddams; that said complainants believe that McAusland was the true and rightful owner of said lands at the time of the sheriff's sale above mentioned.

That McAusland falsely and fraudulently transferred said lands to Waddams, by a deed bearing date February 22, 1849.

That at the time of making said conveyance, said McAusland was in good circumstances, owning and possessing the lands aforesaid, of the value of $2,500, or more; and that Waddams was unable to purchase and pay for said lands; and that Waddams, fraudulently and deceitfully combining with McAusland, fraudulently and deceitfully purchased said lands, and fraudulently holds the same from the creditors of McAusland, and particularly from complainants.

Bill charges that Waddams fraudulently holds possession of a large amount of lands and personal property belonging to McAusland.

Further shows that Waddams, before he purchased of McAusland, knew that complainant, Sarah G. L., had furnished the money wherewith to enter said lands, and also that Sarah G. L. had been trying, and was still trying, to collect her claim in Wisconsin aforesaid, against McAusland; that Waddams had notice of this before he received the deed from McAusland.

General charge of combining and confederating.

Bill waives necessity of answer being under oath.

Bill prays that said lands be decreed to be held in trust for said Sarah G. L. Humphrey by defendants, McAusland and Waddams, and that the sale from McAusland to Waddams be annulled and set aside, so as to enable complainants' title under said sheriff's deed to be perfected, good and sufficient in law, or that said pretended sale from McAusland to Waddams be so far set aside as to enable complainants to make their aforesaid judgment out of said lands.

Prayer for general relief.

The answer of defendant Waddams—not under oath—denies all the material allegations and charges in the bill.

General replication filed to answer of defendant Waddams.

Bill taken *pro confesso* as to McAusland.

Complainants file feigned issue.

Defendant Waddams files his plea in the feigned issue, denying fraud on his part in the execution and delivery of the deed from McAusland to him.

On the trial of the feigned issue there was a verdict for complainants, and a decree upon the verdict setting aside conveyance to Waddams.

There was a motion to suppress the deposition and testimony of witness, Alethea Vail, for the reason that said witness had been the wife of defendant, McAusland.    Motion sustained and excepted to.

LELAND & LELAND, for Appellant.

B. C. COOK, for Appellees.

BREESE, J.    We are not aware of any rule of law requiring a debtor to hold on to his real or personal estate, until a creditor can sue him and obtain judgment and execution.    Such a law would produce disastrous effects, by fettering the free transfer and sale of property from one to another.    But in all sales good faith must be observed, and they must be so conducted as to bear on their face no evidences of fraud whatever.    No matter how much a man may be indebted, he may sell his property for a fair price, or even for a price below its market value, if done honestly and with no view to delay, hinder or defraud his creditors of their just dues, or being in failing circumstances, he has a right to prefer one creditor over all others, even if the preference exhausts his whole estate, and from the honest exercise of this right no court or law, has ever sought to deprive a debtor. A debtor can sell his property for a fair price, even if he sells it with the avowed intention of defeating an honest claim, if no lien exists to forbid it.

Such we understand to be the rights and powers of a debtor. But the sale must be fair and for a valuable consideration, and the parties intending or practicing no fraud.

The evidence before the jury on the trial of the feigned issue, was not, in our judgment, sufficient to satisfy the conscience of the chancellor, of fraud in the sale of these lands.    The weight of evidence appears to us decidedly against the finding, and as on trials of feigned issues the same strictness is not required as in suits at law regularly brought to issue, and do not settle

and bind the rights of the parties, the chancellor will order new trials, until he is satisfied or will assume the responsibility of deciding the cause against the verdict. *Williams* v. *Bishop*, 15 Ill. R. 555.

We are of opinion the court decided correctly, in rejecting the testimony offered, of the divorced wife of McAusland, on principles long established.

We think the purposes of justice can be best promoted by a re-hearing of this cause, and for that purpose reverse the judgment and remand the cause.

*Judgment reversed.*