HENRY K. STEVENS *et al.*

*v.*

PATRICK SHANNAHAN.

*Filed at Ottawa January 20, 1896—Rehearing denied March 17, 1896.*

1. TRIAL—*setting aside verdict, in equity, as to sanity.* The court in an equity suit in which the issue of sanity is sent to a jury may set aside the verdict, although it is not so manifestly contrary to the evidence as to raise a presumption of fraud or partisanship, as the presumption, before inquest found, is in favor of sanity.

2. SAME—*verdict on issues out of chancery—how far it is binding.* A verdict on issues out of chancery, not required by statute to be submitted to a jury, may be disregarded and the issue found by the chancellor as in his judgment the weight of the evidence may justify, although the verdict is not so clearly against the weight of the evidence as would be cause for new trial in an action at law.

3. REAL PROPERTY—*when subsequent deed to innocent purchaser will convey title.* A deed taken without notice of a prior deed, followed by possession before such prior deed is recorded, will give title as against such prior deed, although it is subsequently recorded.

4. POWERS—*power to sell carries power to convey.* Ordinarily, and when there are no limitations to the contrary, the power to sell carries with it the power to convey the title to the thing sold, in the usual and lawful manner.

5. MORTGAGES—*when mortgagee's administrator may execute power of sale.* The administrator of a mortgagee may execute a power of sale given to the mortgagee, "his legal representatives or attorneys or assigns," although the mortgage further provides that the mortgagee, "his heirs, executors, administrators or assigns, or his attorney in fact," may *convey* the premises.

6. SAME—*when foreign administrator may execute power of sale in mortgage.* A power of sale in a mortgage to a non-resident of the State in which the mortgaged premises are situated may be exercised by the administrator appointed in the State of his residence, as the legal title to the mortgage vests in such administrator, and the power is not one dependent upon the laws of either State relating to administration.

7. SAME—*recitals in mortgage estop mortgagor.* A mortgagor is estopped by the terms of the mortgage from asserting that the money secured thereby belonged to a person other than the mortgagee, by whom the loan is stated to have been made, or to contest the beneficial interest of the mortgagee or his estate.

8. SAME—*sale under power after bill filed to redeem.* A sale is properly made under a power in a mortgage, which power, by its terms, continues as long as any part of the mortgage debt remains unpaid, notwithstanding the pendency, undetermined, of a bill for an account and redemption, where it is admitted in such bill that a certain sum was due but the sum is not paid or actually tendered.

APPEAL from the Circuit Court of Will county ; the Hon. DORRANCE DIBELL, Judge, presiding.

GEORGE S. HOUSE, (C. W. BROWN, of counsel,) for appellants.

P. C. HALEY, C. A. HILL, and EGBERT PHELPS, for appellee :

In the absence of statutory authority an administrator of one State cannot sue or be sued in the courts of another, or do any act in another State which the courts therein will recognize as lawful. *Stacy* v. *Thrasher*, 6 How. 596; *Judy* v. *Kelley*, 11 Ill. 211 ; *Rosenthal* v. *Remick*, 44 id. 203; *McLean* v. *Meek*, 18 How. 16; *Low* v. *Bartlett*, 8 Allen, 259; *Ela* v. *Edwards*, 13 id. 48; *McGarvey* v. *Darnall*, 134 Ill. 367.

In *Secrist* v. *Green*, 3 Wall. 748, it was held that at common law a foreign executor could not sell real estate in this State under a power of sale contained in the will.

As to the meaning of the term "legal representatives," see *Warnecke* v. *Lembca*, 71 Ill. 91; *Bowman* v. *Long*, 89 id. 21; *Delaunay* v. *Burnett*, 4 Gilm. 494; *Phelps* v. *Smith*, 15 Ill. 572; *Sanford* v. *Kane*, 133 id. 199.

The original purchaser at a sale under the power contained in a mortgage is chargeable with notice of defects and irregularities attending the sale. But with remote purchasers for value the rule is different. *Hamilton* v. *Lubukee*, 51 Ill. 417; *Gunnell* v. *Cockerill*, 79 id. 79, and 84 id. 319; *McHany* v. *Schenk*, 88 id. 358.

Though the verdict is only advisory to the court, yet it ought not to have been set aside, but should stand, unless clearly and manifestly contrary to the weight of the evidence. *Bible Society* v. *Price*, 115 Ill. 640.

Mr. JUSTICE BAKER delivered the opinion of the court:

The facts in this large record are complex. We shall only refer to such as are deemed necessary to an understanding of the view that we take of the case.

On and prior to October 6, 1873, Patrick Shannahan, the appellee, was the owner in fee of certain real estate in the city of Joliet, and on that day he and his wife, Bridget Shannahan, executed their note of that date, payable five years after date, to Pelick Stevens or order, for $3500, with interest at ten per cent per annum, payable annually, and secured the note by a mortgage of same date, with power of sale, on said real estate. By deed of March 20, 1877, said Patrick, his wife joining with him, conveyed said real estate to their son, T. Patrick Shannahan, and immediately thereafter, and on the same day, said T. Patrick Shannahan deeded the same to his mother, Bridget Shannahan. On December 31, 1877, Bridget Shannahan and Patrick Shannahan executed their joint note of said latter date, payable ten years after date, to said Pelick Stevens or order, for $2665, with ten per cent interest per annum, payable annually, and on the same day secured the same by a second mortgage, with power of sale, on said real estate. Said second mortgage contained this provision: "And it being also expressly agreed between the parties hereto, that should any default be made in the payment of said interest, or any part thereof, or any part of the principal, on the day when the same becomes due and payable as herein expressed, and should the same, or any part thereof, remain unpaid and in arrears for the space of fifteen days, the aforesaid principal sum of $2665, with all arrearages of interest thereon, shall, at the option of the said party of the second part, heirs, executors, administrators or assigns, become and be due and payable immediately, anything herein contained to the contrary thereof notwithstanding."

Said Pelick Stevens was a resident and citizen of Kalamazoo county, in the State of Michigan, and in each of

the mortgage deeds he was designated as of that county and State. He died there, intestate, on or about August 14, 1881, and forthwith his widow, Lydia Stevens, was by the probate court of said Kalamazoo county appointed administratrix of his estate, and she qualified as such under the laws of the State of Michigan. On May 1, 1882, the said Lydia Stevens, as such administratrix, advertised the real estate here in question for sale, under and by virtue of the power of sale contained in the mortgage bearing date December 31, 1877, and such sale was advertised to take place on Saturday, the first day of July, 1882. Thereupon, on June 29, 1882, Bridget Shannahan filed in the Will circuit court the original bill herein, and secured a preliminary injunction enjoining such sale. The bill was for an accounting concerning the indebtedness secured by the mortgage and the several transactions connected with the same. The bill claimed certain credits, and that there was usury in said transactions. It, however, made this admission: "That there is now due and owing to said defendant from complainant, upon said mortgage, the sum of $2721.89, allowing six per cent per annum upon the amount of money received by complainant thereon, which sum complainant now tenders and is ready to pay as directed by this honorable court." The sole defendant to the original bill, Lydia Stevens, administratrix, filed an answer thereto, and such proceedings were then had as that the temporary injunction was dissolved, but no final disposition otherwise made of the bill.

After the dissolution of the injunction Lydia Stevens, as such administratrix, again advertised said real estate for sale under and by virtue of the power of sale in said mortgage of December 31, 1877, subject, however, to the prior mortgage thereon of October 6, 1873. On the second day of October, 1882, in pursuance of said advertisement, she offered the real estate for sale, and at the sale Jerome P. Stevens bid the sum of $4000, and the said real estate was struck off and sold to him at that price, and said

Lydia, as such administratrix, executed and delivered to him deeds therefor. Thereafter the tenants in possession of said real estate attorned to said Jerome P. Stevens as their landlord, and he, said Jerome, went into the actual possession of said real estate, claiming the same as owner. Afterwards, on February 12, 1884, Bridget Shannahan, for and in consideration of the sum of $300 to her paid by said Jerome P. Stevens, and for the further consideration of the settlement of whatever remaining indebtedness was due from her and of the still pending litigation, made a deed to said Jerome for said real estate, and said deed was duly recorded on February 15, 1884. As part and parcel of the transaction resulting in the execution of the deed last named, a stipulation was executed and delivered by said Bridget Shannahan, which stipulation was in the words and figures following:

"STATE OF ILLINOIS, } *ss.*
    *Will County.*

           *In Circuit Court, January Term, A. D. 1884.*

BRIDGET SHANNAHAN }
      *vs.*           }   Bill and Injunction.
LYDIA STEVENS, Admx. etc. }

    "It is hereby stipulated by the complainant in the above entitled cause that a decree may be entered, by consent of parties, finding the equities of said cause for the defendant, and dismissing the bill upon such finding at complainant's cost, but without right of action on the part of defendant upon the injunction bond, in such case the sureties thereon to be discharged from all liability, the matters in controversy being fully settled.

"Witnesses { JOHN GLEASON,       BRIDGET (X) SHANNAHAN.
             { J. P. STEVENS.          Mark.
                            C. W. BROWN, *Atty for Deft.*"

    This stipulation was filed in the cause, and at the January term, 1884, of the circuit court a decree was entered dismissing the bill of complaint in pursuance of the stipulation.

Jerome P. Stevens, claiming to be owner of the property, made valuable, lasting and permanent improvements thereon, at an expense of some $4500, and he also paid to Lydia Stevens, administratrix, the money due on the prior mortgage and note of October 6, 1873, the amount so due and paid being $5775, and a release of said prior mortgage was executed and delivered. Thereafter, Jerome P. Stevens, by deed of July 9, 1887, for a consideration of $16,000, conveyed the said real estate to his father, Henry K. Stevens, and the latter, by deed of July 20, 1887, conveyed said real estate to his son Henry T. Stevens, in consideration of love and affection and the sum of five dollars, and said Henry T. Stevens was thereupon let into the possession of the premises, and since then has continued to be and now is in possession of the same, by himself and tenants. In the meantime, at the same January term, 1884, of the circuit court that the decree was rendered dismissing the bill of complaint of Bridget Shannahan, but upon a later day of the term, a motion was entered by Patrick Shannahan, as husband and co-mortgagor of Bridget Shannahan, to set aside the decree of dismissal and to allow him to intervene in the cause as a co-complainant. This motion was not submitted to the court until the May term, 1886, when it was denied. The ruling of the court in that behalf was affirmed in the Appellate Court, but was afterwards, on October 31, 1891, reversed by this court, (*Shannahan* v. *Stevens*, 139 Ill. 428,) and the cause remanded to the circuit court, with directions to set aside its decree of the January term, 1884.

It appears that shortly after the rendition of the decree of the January term, 1884, Bridget Shannahan departed this life. It also appears that after the remandment of the cause said decree was vacated, and that on January 28, 1892, at the January, 1892, term of the circuit court, Patrick Shannahan, T. Patrick Shannahan and William J. Shannahan, (the two latter being the sons and heirs-at-law of Bridget Shannahan, deceased,) by leave

of court filed in the cause their amended and supplemental bill, and at various times thereafter, by like leave of court, filed numerous amendments to their bill, and that Henry K. Stevens, Jerome P. Stevens, Henry T. Stevens and other persons were joined with Lydia Stevens, administratrix, as parties defendant, and that the several defendants answered the amended and supplemental bill and the amendments thereto, and that there were replications to these answers.

The record shows that upon the issues formed by the pleadings as to the sanity of Bridget Shannahan at the time of the execution by her of the deed of February 12, 1884, and the stipulation for the dismissal of the original bill, the following propositions of fact were submitted by the court to a jury for trial, to-wit:

"*First*—Was the instrument referred to in the pleadings in this cause, purporting to be a deed of the premises in controversy from Bridget Shannahan to Jerome P. Stevens, the deed of the said Bridget Shannahan?

"*Second*—Was the stipulation in said pleadings referred to and set out, the act of Bridget Shannahan?"

It also shows that the jury returned the following verdicts: "We, the jury, find that the instrument referred to in the pleadings, purporting to be a deed of the premises in controversy from said Bridget Shannahan to Jerome P. Stevens, was not the deed of said Bridget Shannahan." "We, the jury, find that the stipulation in said pleadings referred to and set out was not the act of the said Bridget Shannahan." And that thereupon the defendants moved for a decree in their favor, notwithstanding the verdicts, and that this motion was reserved by the court for decision until the final hearing of the cause.

In the amended and supplemental bill it was alleged, among other things, that prior to the deed and stipulation of February, 1884, and on the 17th day of May, 1882, Bridget Shannahan, by her warranty deed of that date, conveyed to Patrick Shannahan all, or nearly all, of the

real estate in question, and on December 30, 1893, on motion of T. Patrick Shannahan and William J. Shannahan, the cause as to them and as to the property in question was dismissed out of the cause and out of court.

Upon the final hearing of the cause it was, at the January term, 1894, of the court, among many other things, ordered, adjudged and decreed that the foreclosure sale out of court made by Lydia Stevens, as administratrix, on October 2, 1884, under the power of sale contained in the mortgage of December 31, 1877, and the deeds executed thereunder by said Lydia Stevens to Jerome P. Stevens, were and are ineffectual and inadequate to bar and cut off the rights which at said time existed in Bridget Shannahan and Patrick Shannahan, or which now exist to said Patrick Shannahan, in the real estate in question.

The seventeenth finding of the decree, and the portion of the decree based thereon, were as follows: "That the motion of the said defendants for judgment in their favor upon the propositions of fact submitted to the jury herein under the order of court of date January 14, 1893, entered of record herein, notwithstanding the verdict of the jury thereon, should be allowed. And the court finds that the verdict of the jury on the said two propositions of fact so submitted to the jury should not be allowed to prevail. The court finds that at the time of the execution of the said deed by her, the said Bridget Shannahan, to the said Jerome P. Stevens, of date February 12, 1884, and filed for record in the recorder's office on the 15th day of February, 1884, and duly recorded in book 218, at page 41, she, the said Bridget Shannahan, was of sufficiently sound mind and mental capacity to bargain and contract as is bargained and contracted in and by said deed, and that the said deed of conveyance was and is her act and deed, and as such was and is binding and conclusive upon her and all claiming by, through or under her, according to the legal tenor and effect of said deed, and that said deed, from and after its delivery, was and is effectual,

both at law and in equity, to invest the said grantee·
therein named with all the right, title and interest the
said Bridget Shannahan had in and to said real estate in
said deed described, being the same real estate involved
in this suit; and that at the time of the execution of
the said stipulation hereinbefore set out and filed in this
cause, February 16, 1884, the said Bridget Shannahan,
who executed the same, was of sufficiently sound mind
and mental capacity to bargain and contract as is bar-
gained and contracted in and by said stipulation, and
that the said stipulation was and is her act and stipula-
tion, and as such was and is binding and conclusive upon
her, and all persons claiming by, through or under her,
according to its legal tenor and effect; and that in the
transaction which resulted in the execution and delivery
of said deed last named and of the said stipulation above
named and set out, all matters in controversy between
the said parties to the original bill herein, at the date of
the filing of said stipulation, which were set out in said
original bill or might have been litigated thereunder, were
fully and completely settled and adjusted between the
parties,—Lydia Stevens, as such administratrix, Bridget
Shannahan and Jerome P. Stevens; that thereby all the
indebtedness which in said bill is set out as owing by the
complainant therein, Bridget Shannahan, and her hus-
band, Patrick Shannahan, or for which she or Patrick
Shannahan was in any way liable or obligated, was com-
pletely and in full paid, and she and her husband, Patrick
Shannahan, relieved and discharged therefrom. 　* 　* 　*
It is therefore ordered, adjudged and decreed by the court,
that the said deed of conveyance of date February 12,
1884, from Bridget Shannahan, late deceased, as grantor,
to Jerome P. Stevens, as grantee, filed for record in said
Will county in book 218, at page 41, is binding, conclusive
and effectual between the several parties thereto and
their privies, according to its legal tenor and effect; and
in addition, that the said stipulation executed by the said

Bridget Shannahan, late deceased, and hereinabove set out and filed in this cause February 16, 1884, is binding, conclusive and effectual between the several parties and their privies, according to its legal tenor and effect and to the full extent as found by this court, and as such is to be regarded and acted upon; and that in the transaction which resulted in the execution and delivery of said deed and stipulation, all matters involved in this suit under the original bill were fully settled, all the said indebtedness under the several mortgages hereinbefore described was paid, and the said Bridget Shannahan and her husband relieved and discharged from all the indebtedness in said original bill and in the foregoing recitals of this decree named." It was further decreed that Patrick Shannahan should take nothing by the deed of May 17, 1882, from Bridget Shannahan to himself, and that he, the several mortgage debts having been settled and paid, was without further equity save dower in the property, and it was decreed that "the said Patrick Shannahan now hereby is adjudged and decreed to be endowed, for and during the period of his natural life, with the rents, profits, use and possession of said premises," and commissioners were appointed to assign such dower.

From the decree that was rendered by the court, the defendants, Henry K. Stevens, Jerome P. Stevens and Henry T. Stevens, took this appeal, and among the assignments of error that they make are these: That the court below erred in holding that the foreclosure of the mortgage of December 31, 1877, and other proceedings thereunder, were invalid, premature and not authorized, and erred in awarding dower to appellee. Appellee assigns a number of cross-errors, but the substance of them is contained in these: That the court below erred in sustaining the motion of appellants for a decree in their favor, notwithstanding the verdict upon the issues submitted to the jury; that it erred in decreeing that appellee was estopped from asserting title under the deed from Bridget

Shannahan to himself, and erred in not finding and de-creeing title in appellee, subject only to an accounting as to the amount due upon the notes and mortgages from appellee and his wife to Pelick Stevens.

The case may more conveniently be disposed of by first considering some of the assignments of cross-errors.

It is claimed that the verdict of the jury as to the san-ity of Bridget Shannahan ought not to have been set aside by the court unless it was so manifestly contrary to the evidence as to raise a presumption of fraud or partisan-ship on their part. This claim cannot be sustained. The presumption of the law, before inquest found, is in favor of sanity, and the burden of establishing insanity is upon the party alleging it. *Titcomb* v. *Vantyle,* 84 Ill. 371.

It is also insisted that the rule is, that the verdict should not have been disregarded unless it was clearly and manifestly against the weight of the evidence,—so much so that it would have called for the granting of a new trial if in an action at law; and the case of *American Bible Society* v. *Price,* 115 Ill. 623, is cited as sustaining such claim. The case relied on was one of a bill contest-ing a will, and the authorities cited in the opinion ren-dered in that case,—*Brownfield* v. *Brownfield,* 43 Ill. 147, *Meeker* v. *Meeker,* 75 id. 260, *Carpenter* v. *Calvert,* 83 id. 62, and *Long* v. *Long,* 107 id. 210,—were all cases of like character. The Statute of Wills (sec. 7) requires that in such cases "an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury." But in this State the rule in respect to verdicts of juries on issues out of chan-cery that are not required by statute to be submitted to a jury, is, that the chancellor may either act upon such verdict or disregard it and find the issue himself, as in his opinion and judgment the weight of the evidence may justify. *Meeker* v. *Meeker, supra; Calvert* v. *Carpenter, supra; Titcomb* v. *Vantyle, supra; Williams* v. *Bishop,* 15 Ill. 553.

We have examined and considered with a considerable degree of care the testimony relating to the issue of sanity or insanity, and in our opinion there was no error in the action of the court in rendering its decree without regard to the verdict of the jury. We think that the evidence, considered as a whole and read in the light of the surrounding circumstances, signally fails to show that Bridget Shannahan was of such unsound mind as would avoid her deed or contracts.

The validity of the deed and stipulation of February, 1884, being established, it follows that the deed which Bridget Shannahan made to appellee for the premises on May 17, 1882, but which was not filed for record until March 28, 1884, is not operative as against said deed of February 12, 1884, to Jerome P. Stevens, which was filed for record on February 15, 1884. This conclusion results from the effect of our recording acts, and the fact that said Stevens took his deed without notice of the prior deed to appellee, and also from the further fact that he was in actual, visible and open possession of the property before appellee's deed was filed for record. It is not necessary to refer to the doctrine of estoppel in order to sustain the junior deed as against the prior deed. It also results from the validity of the deed and stipulation, and from the transaction which culminated in their execution and in the payment by Jerome P. Stevens to Bridget Shannahan of $300, that the mortgage indebtedness under the two mortgages was settled and discharged by the arrangement made, and Bridget Shannahan and appellee freed therefrom, and the matters in litigation in the original bill fully adjusted, as is found and adjudged by the decree entered in the circuit court.

The questions then arise, are the assignments of error made by appellants well assigned? Did the court err in decreeing that the mortgage sale, and the deed made by Lydia Stevens, administratrix of Pelick Stevens, de-

ceased, were inoperative and void?   And did it err in awarding dower to appellee?

In the mortgage deed of December 31, 1877, Bridget Shannahan, and her husband, Patrick Shannahan, were party of the first part, and "Pelick Stevens, of Kalamazoo, in the State of Michigan," was party of the second part. The powers to sell and convey, granted by the deed, were in- substance as follows: "But in case of non-payment, etc., then and in such case it shall and may be lawful for the said party of the second part, or his legal representatives or attorneys or assigns, to enter upon, possess, hold and enjoy the above .granted premises, and either with or without such entry, after having advertised a sale of the above described premises, or any part thereof, by, etc., to sell the said premises or any part thereof, and all right and equity of redemption of the said party of the first part, their heirs, executors, administrators or assigns therein, at public vendue, etc., and upon the making of such sale or sales the said party of the first part does authorize and empower the said party of the second part, his heirs, executors, administrators or assigns, or his attorney in fact, to execute and deliver to the said purchaser or purchasers a deed or deeds of conveyance in fee of the premises sold by virtue hereof."

It is thus seen, that in the event of the mortgagee's death his "legal representatives or assigns" are authorized to make the sale, and after the sale has been made his "heirs, executors, administrators or assigns" are authorized to make the deed.   It is claimed that in the contingency suggested two and different classes of persons seem to be empowered to act,—one in making the sale and the other in making the deed; that it is uncertain and indefinite what was the real intention of the parties; that powers of the kind here involved are to be strictly construed, and that therefore the sale that was made should not be upheld.   We are unable to concur in the conclusion thus reached.   The thing to be ascertained is the

real intention of the parties to the contract, and it seems to us that this can be easily determined, and with reasonable certainty. In the first place, the usual and natural way in which powers of the kind in question are exercised and matters of such sort transacted and done, is, that the person who is authorized to and does make the sale is also the person who gives effect to the sale so made, and brings it to a successful conclusion by the execution of the necessary conveyance or transfer of property. Ordinarily, and when there are no limitations to the contrary, the power to sell carries with it the power to convey the title to the thing sold, in the manner in which such title is usually and lawfully conveyed. The natural presumption, then, would be, that such was the intention in this case.

In *Warnecke* v. *Lembca*, 71 Ill. 91, it was held that the "legal representative," in the commonly accepted sense, means the executor or administrator, but that this is not the only definition, and that it may mean heirs, next of kin or descendants, and sometimes assignee or grantee, and that the sense in which the term is to be understood depends upon the intention of the parties using it, and is to be gathered, not always from the instrument itself, but as well from the surrounding circumstances. In that case it was said that there the assignee was the legal holder of the indebtedness, and that the assignment carried with it the mortgage as a mere incident, and the conclusion reached was, that the administratrix of the trustee, since she had neither the legal title to the estate mortgaged nor the indebtedness, could not lawfully exercise the power of sale. In *Bowman* v. *Long*, 89 Ill. 19, like doctrine was announced. It was there said, that the term "legal representatives," in its strict and literal acceptation, means executors or administrators, but that it is frequently used in a different sense, and that the question of intention is to be considered in its construction, and that this intention is not to be considered solely from the instrument

itself, but, in part, from concomitant circumstances and the existing state of things, and the relative situation of the parties to be affected by it. And in the late case of *Sanford* v. *Kane*, 133 Ill. 199, we said: "If the note was secured by the mortgage, its legal holder would be authorized to execute the power of sale."

The expression "legal representatives," here used in delegating the power of sale, is broad enough to, and does, include the "heirs, executors and administrators" used in delegating the power of executing deeds. The only difference is, that the latter is more specific than the former, and more precisely explains that which, with reference to the power of sale, was expressed in more general terms. The powers here granted to Pelick Stevens, his assignees, legal representatives, heirs, executors or administrators, were powers appendant to the estate and were coupled with an interest. They were given as a security for the note described in the mortgage. The mortgage was a mere incident to the debt witnessed by the note and went with it, and the powers followed the legal title to the note, and upon the death of Pelick Stevens vested in his administratrix.

It is, however, insisted, that since Pelick Stevens was a citizen and resident of the State of Michigan, and died in that State, intestate, and Lydia Stevens was appointed administratrix of his estate by the probate court of Kalamazoo county, in that State, and no letters of administration upon his estate were ever issued in this State, she, said Lydia Stevens, had no lawful right to execute the powers of sale and conveyance contained in the mortgage. Reliance is placed upon the familiar rule, that at common law, and in the absence of statutory authority, an administrator appointed in one State cannot sue or be sued in the courts of another, or do any act in another State which the courts of that State will recognize as lawful.

In *Hickox* v. *Frank*, 102 Ill. 660, it was held that an administrator of an estate appointed in another State has

the legal right, under our statute, to collect notes due to his estate, and to that end may foreclose deeds of trust securing them, when no administration is granted on the same estate in this State. The case does not go to the extent of holding that such foreign administrator may exercise a power of sale given in a mortgage on real estate in this State, and no such question was there involved, but it does go to the extent of holding that such foreign administrator, in the absence of administration in this State, is invested with the legal title to notes payable to his intestate and secured by mortgage on real estate in this State; and, as we have already seen, a mortgage deed is a mere security for and an incident to the indebtedness included in the note, and the power to sell and convey is a power coupled with an interest, and appendant to the estate, and the mortgage and power are attendant upon the interest, and vest in whomsoever the legal title and interest in the note vests. Here, if the power had been in terms donated to Pelick Stevens, and in case of his death to Lydia Stevens, could there be any doubt that upon the death of Pelick Stevens the power would have vested in Lydia Stevens? As the case is, the power was to Pelick Stevens, and, in substance, to such person as should succeed to his legal title in the note and indebtedness. It is plain that Lydia Stevens, administratrix, succeeded to such legal title and interest. Then why did not the power, as well as such legal title and interest, vest in her? She being the legal representative of Pelick Stevens, his administratrix, and vested with the title and interest that had been in him, is the person that by the express terms of the mortgage deed is empowered and authorized to make sale of the premises and execute and deliver deeds conveying the same.

The power to sell and convey that Lydia Stevens assumed to execute was not a power that had its origin in, or was donated by, or was dependent upon, any authority that emanated from the laws of either Illinois or Michi-

gan relating to the administration of estates. It was a power granted by valid private contract made between persons competent to contract, and it vested in Lydia Stevens, not by force of any law regulating the administration of estates, but by virtue of the contract itself, and because she met the contract requirement of being administratrix of the estate of the original donee of the power. The right to execute the power arose and resulted, not from any appointment under any law, but from the grant that was made by the mortgagors. The power provides that on the death of the mortgagee the administratrix shall be and is the donee of the power, and the fact of appointment as administratrix merely identifies Lydia Stevens as the person who is the donee of the power.

We think that *Judy* v. *Kelley*, 11 Ill. 211, and other like cases, are not in conflict with the views we have expressed. There is a marked distinction between the acts of a foreign administrator who bases his sole power to act in this State on his letters of administration granted by a foreign State, 'and a case where an administrator of a foreign State uses his foreign letters of administration simply as proofs identifying himself as the person designated in a certain contract, and, this being done, rests entirely for his authority to act, upon a power donated to him by the contract.

A further point is made, that the money secured by the mortgage was in law and in fact the money of Henry K. Stevens, and that the administratrix of the estate of Pelick Stevens, the estate having no beneficial interest in the mortgage, could not lawfully exercise the power of sale. Appellee is estopped by the recitals and admissions in the mortgage deed executed by him, from making any such claim as this. And he joined in the execution of the note, whereby he promised to pay the $2665, and interest, to "Pelick Stevens or order," and the legal title to the note, and the legal right to demand the money mentioned in such note, as between appellee and said

Pelick Stevens or his legal representative, were vested in said Pelick Stevens and in those who succeeded to his legal right.    Even if some third person, whose name was not disclosed, in fact furnished the money that was loaned and was the real and equitable owner thereof, it was a matter with which appellee had no concern.    His contract, embodied in the note and mortgage, was with Pelick Stevens, and he cannot change the contract by parol proof.    The case of *Warnecke* v. *Lembca*, 71 Ill. 91, is cited; but in that case it was expressly decided that the person who has the legal title to the note and indebtedness is the party to execute the power of sale.    If we should go beyond the simple question of legal title, and open up to inquiry the whole broad field in regard to secret trusts and agencies and latent equities, it would do much to render titles to real estate precarious and uncertain.    It may be that in some cases and upon some issues, where equitable rights and issues are involved, evidence of the kind here in question would be admissible and material; but here it is a question of simple legal title and right—in whom did the purely legal power to sell and convey vest at law?

It is claimed, that since the original bill of Bridget Shannahan for an accounting and for redemption was pending and undetermined at the time of the sale under the power, such sale was improper and void, and the case of *Ryan* v. *Newcomb*, 125 Ill. 91, is cited as sustaining such claim.    The doctrine of the case so relied on, even if it should be adhered to, is not to be extended beyond what was there decided.    There is a very marked difference between that case and this.    There it was claimed in the bill that was pending at the time of the sale, that Ryan, the complainant, was not indebted to Newcomb in any amount whatever, and that nothing was due on the note for $1400 that the trust deed was given to secure.    Assuming the averments of the bill to be true, Ryan was not in default, and the mortgage indebtedness had entirely

ceased to exist and the power of sale had become inoperative and void. Here, on the other hand, the right to exercise the power of sale, by the very terms of the mortgage deed, continued to exist so long as any part of the mortgage debt remained due and unpaid; and, as we have already seen, it was expressly admitted in the original bill of Bridget Shannahan "that there is now due and owing to said defendant from your oratrix, upon said mortgage, the sum of $2721.89, allowing six per cent per annum upon the amount of money received by your oratrix thereon, which sum your oratrix now tenders and is ready to pay as directed by this honorable court." This shows a clear right in Lydia Stevens to exercise the power of sale—at least in the absence of any proof that this sum of $2721.89 was either paid or actually tendered and the tender declined.

The conclusion that we have reached is, that the sale made by Lydia Stevens under the power in the mortgage deed was a valid sale, and that the deed that she executed and delivered to the purchaser at such sale conveyed to him in fee the lands in question, and effectively cut off and destroyed the equity of redemption and also the dower right of appellee, he having joined in the execution of the mortgage deed.

The view we have taken of the case renders it unnecessary to consider various questions argued in the briefs in regard to tax titles, the Statute of Limitations, and other matters.

It follows from what we have said herein, that the circuit court erred in holding that title did not pass by the sale made under the power in the trust deed of December 31, 1877, and in awarding dower to appellee.

The decree is reversed and the cause is remanded, with directions to dismiss the original bill, the amended and supplemental bill, and all amendments to said bills, for want of equity, at the cost of Patrick Shannahan, the appellee. *Reversed and remanded.*