(No. 19562.—

MAGGIE OSWALD, Appellee, *vs.* C. A. NEWBANKS *et al.* Appellants.

*Opinion filed October 19, 1929.*

WRIGHT & WRIGHT, and BYRON PIPER, for appellants.

G. F. TAYLOR, and HAROLD J. TAYLOR, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Maggie Oswald filed a bill in the circuit court of Effingham county against James E. Smith, Jr., and his grantees, C. A. Newbanks and Tillie Newbanks, to declare null and void, as a forgery, an instrument purporting to be a deed which was executed by the complainant on February 27, 1928, conveying certain lots in the city of Effingham to James E. Smith, Jr., which was recorded in the recorder's office of Effingham county; to cancel such record, to declare the title to the property to be in the complainant, and for general relief. An answer was filed and an issue of fact was submitted to a jury, as follows: "Is the deed set forth in the bill of complaint, purporting to have been executed by Maggie Oswald to James E. Smith, Jr., her genuine deed of conveyance?" which the jury, after

hearing the evidence, answered in the negative. A motion by the defendants for a new trial was overruled, and a decree was entered setting aside the forged deed and the deed from Smith to the Newbanks. C. A. Newbanks and Tillie Newbanks have appealed.

The evidence discloses these facts: At the time of the occurrence of the events out of which this suit arose the appellee was living in St. Louis with her daughter Lena Oswald, having left Effingham about two years previously. She had had her property in Effingham, consisting of the ten lots involved in this suit, with the building on it, listed with Finn Butler for sale for about a year. Another daughter, Mrs. Margarette Adler, also lived in St. Louis. In the forenoon of Thursday, February 23, 1928, Floyd A. Johnston, who was a real estate agent in St. Louis, called at the home of Miss Oswald, the daughter with whom the appellee was living. Miss Oswald, Mrs. Adler and the appellee were present. He presented a written contract for the exchange of the Effingham property by the appellee, by the name of Margarette Oswald, for property situated in Ferguson, a suburb of St. Louis, James E. Smith, Jr., being the other party to the contract, which was drawn in triplicate but had not been signed by Smith. It had been submitted to Adler, the appellee's son-in-law, who had examined it and had telephoned to his wife his approval of it and had called to her attention certain marks appearing on it whereby it might be identified. The three women read the contract and identified it as the one approved by Adler. The appellee thereupon signed two, and probably all three, of the copies by the name of Margarette Oswald. The three original papers have been certified to us and each is signed by that name. Johnston then left, taking two copies with him and leaving the third with the appellee. Smith inspected the Effingham property on the following Sunday, and on Monday, the 27th, Johnston again called upon the appellee. Again the appellee and her two daughters were

present. He brought with him the contracts which he had taken away, now bearing Smith's signature. He substituted one of these for the copy which the appellee had. At the first interview the appellee had agreed to secure the papers relating to her title from the bank in Effingham where she kept them, and on Monday she notified Johnston that she had received the papers. The abstract of title was one of them, and it showed that the title stood in the name of Maggie Oswald. The appellee and her daughters testified, in substance, that Johnston noticed this and said that a new exchange contract should be signed by the name of Maggie Oswald; that he produced such a contract, which was then submitted to and read by the three women, and, after they were thus assured of what it was, the appellee signed it "Maggie Oswald," and it was taken away by Johnston. Johnston testified, in substance, that the paper which was then submitted to and signed by the appellee was a deed to Smith. The grantor named in the deed, which he had prepared at his office, was Margarette Oswald, and before it was signed he changed the name to Maggie. The description was not then in the deed but it was afterward written in by the girl at the office. Johnston told Mrs. Oswald before he left that he would have a notary public call her by telephone to take her acknowledgment. The deed was not produced on the hearing, but as recorded on the following day it purported to have been acknowledged before William M. Clancy, a notary public of St. Louis, who testified that he was requested by Johnston to call Mrs. Oswald by telephone at the number which Johnston gave him and to take her acknowledgment. He did so, not having known Mrs. Oswald, and the person who answered the call as Mrs. Oswald acknowledged the execution of the instrument which he then had, and he attached his certificate of acknowledgment, wherein he stated that Maggie Oswald was personally known to him to be the person who signed the deed and that she appeared be-

fore him in person and made the acknowledgment. He did not verify or remember the telephone number which he called. He thought the call was over the Forest exchange. At that time Johnston's office was on the Forest exchange of the telephone while the telephone at Miss Oswald's place of residence was on the Delmar exchange.

Although nothing had been done at that time to show title to the Ferguson property in Smith, subject only to the incumbrances mentioned in the contract of exchange, and no deed had been executed conveying the Ferguson property to the appellee, Johnston caused the instrument which purported to be a deed from the appellee to Smith to be recorded on February 28. Under date of February 27 Smith signed and acknowledged before Clancy, the notary public, a deed of the Effingham property in which the name of the grantee was not written. This deed was delivered to the appellants, Clifford Newbanks and Tillie Newbanks, on March 8, after their names were, in the absence of Smith, written in as grantees, and as consideration for it Newbanks paid $2250 to Johnston, of which $2000 was in the form of a certified check and $250 was in cash, and the deed was also recorded on March 8. Newbanks had formerly offered $3000 for the property, but his testimony to that effect was stricken upon motion.

At some time a deed from Smith conveying the Ferguson property to the appellee was recorded, and Adler, who was the appellee's agent, seems to have gone into possession of the Ferguson property by renting it to tenants, from whom he collected the rents. By her bill the appellee offered to do with reference to the Ferguson title whatever equity should require. The certificate of title of the St. Louis Land Title Company showing the condition of the title of the Ferguson property, furnished on the part of Smith, was dated March 12 and showed various incumbrances against the title which were not contemplated by the contract of exchange between Smith and the appellee.

On behalf of the appellants an instrument in writing dated March 12, 1928, was placed in evidence, which purported to be a receipt of $74.17 by the appellee in full settlement and adjustment of all matters arising out of the exchange of the properties. Johnston testified that it was signed by Adler for the appellee, and she that she had not seen it and did not know whether he paid her that money or not on that date.

The circumstances were as conflicting as the direct testimony. If it is unreasonable to suppose that Johnston on his second visit would have had a fourth copy of the exchange contract ready to be signed by the appellee in the name of Maggie, it is equally unreasonable to suppose that the appellee would have executed and delivered the deed to Johnston before she learned of the condition of the title to the Ferguson property and before the execution of a deed of it to her. The exact time when the appellee learned of the record purporting to show her deed to Smith does not appear with certainty. She testified that she received a letter from Finn Butler a week or two after she signed the papers, telling her that her place was sold and asking for his commission. Butler testified that the letter was written on February 28. Butler's wife actually wrote the letter for him. She testified on cross-examination: "I don't remember exactly when I wrote that letter. I couldn't say. It might have been February 25, so far as I know. I would rather say it was about the 3d or 4th of March. I can't say the exact date of that letter." The appellee did not answer it. Adler learned from Johnston that he claimed that the appellee had conveyed the Effingham property to Smith and on March 28 or 29 went to Effingham and examined the record. He inquired of Newbanks if he had the deed from Mrs. Oswald conveying the property to Smith, and Newbanks, after looking over many papers, showed Adler the deed from Smith to Newbanks but did not have the deed from Mrs. Oswald to Smith. Adler

made other inquiries in Effingham but could not find the deed to Smith. The bill in this case was filed on April 13, 1928. Later, during the summer of 1928, Adler asked Johnston in St. Louis if he had the deed which he claimed Mrs. Oswald signed, and he said he had but he did not want to turn it over to the appellants' attorneys without Adler's consent. Testimony of witnesses was introduced that Johnston's reputation for truth and veracity and honesty and fair dealing was bad. The evidence justifies the conclusion that title to the Ferguson property was held by Smith merely as a matter of convenience for Johnston.

The appellants have argued this case as if it were a bill to set aside for fraud a deed executed by the complainant or for the rescission and cancellation of a contract for fraud in procuring it to be entered into. This is a mistaken theory of the case. The bill was not filed to set aside a deed of the complainant but to cancel the record of a forged instrument purporting to be her deed as a cloud on her title. The only issue was whether or not she executed the deed, and that was the only issue to be tried in this case. Either she was entitled to a decree adjudging the instrument not her deed or her bill should be dismissed. The remedy she adopted was the proper remedy. Her suit was promptly begun, and the respective rights of the parties under the negotiation for the exchange of property could not affect the issue in this case. The burden was on the complainant to prove that she did not execute the instrument, and if she proved that fact she was entitled to the relief granted by the decree.

The appellants offered in evidence the record of the instrument in question, C. A. Newbanks having filed the affidavit required by section 36 of the Conveyance act preliminary to the introduction of the record. An objection having been made the court reserved its decision but at the close of the evidence sustained the objection. After counsel for the complainant had made his opening address and

two of counsel for the defendants had addressed the jury, the court of his own motion re-opened the case and admitted the record in evidence. The court stated, however, out of the presence of the jury, that the record would not be admitted as evidence of the execution of the original, and modified an instruction offered on the part of the defendants by striking out the statement that the record of the purported deed was evidence of its due execution and delivery. The contention of the appellants was that the record was evidence of the due execution and delivery of the deed, which could not be overcome by the unsupported testimony of the maker of the deed but only upon clear, convincing and satisfactory proof. (*Kerr* v. *Russell,* 69 Ill. 666; *Duncan* v. *Duncan,* 203 id. 461.) The affidavit was a sufficient foundation for the introduction of the copy in evidence. (*Wyman* v. *City of Chicago,* 254 Ill. 202.) Under section 35 of the Conveyance act the instrument was admissible to record because of the acknowledgment, and being recorded the record became evidence under the circumstances provided in section 36.

The certificate was thoroughly and completely refuted by the testimony. The appellee denied the acknowledgment. Johnston and the notary by their testimony thoroughly discredited the certificate. The appellee was not known to the notary and she did not personally appear before him. He was not familiar with her voice, and, of course, did not recognize it. The telephone number which he called was given him by Johnston and he did not verify it by the directory. The certificate of the notary, under the circumstances, was entitled to no weight as evidence, and the question whether the deed was executed by the appellee or not must be determined upon her testimony and that of her two daughters on the one side and that of Johnston on the other, in the light of the circumstances and the actions of the parties. On that question the finding of the jury and the decree entered by the chancellor are per-

suasive, because they had the opportunity, which we have not, of seeing the witnesses and judging of their credibility by their demeanor while testifying. The actions of the parties and the circumstances surrounding the transaction are no more difficult to reconcile to the one version of the matter than the other. In number of witnesses the weight was with the appellee, whose two daughters corroborated her story, while Johnston stood alone, and his reputation for truth and veracity was impeached. The disappearance of the deed is also a circumstance to be considered. Adler testified that when he was searching for the deed Johnston told him that he had it, while Johnston testified that Barada, an employee of Johnston's real estate office, through whom Johnston had caused the deed to be recorded, told him that he, Barada, had given the deed to Adler after it was recorded. Adler testified that he never knew Barada and did not receive the deed from him and never received it from anyone. Barada did not testify. This controversy started soon after the event. The fact that the deed had disappeared is a suspicious circumstance which points toward Johnston as the man responsible for the disappearance rather than toward Adler.

Before the decree was entered the appellants moved for a new trial, which was denied. They have assigned error on this action of the court but have not argued the assignment. The verdict of the jury was merely advisory and might have been disregarded by the chancellor. The rule in respect to verdicts of juries on issues out of chancery that are not required by statute to be submitted to a jury is, that the chancellor may either act upon such verdict or disregard it and find the issues himself, as in his opinion and judgment the weight of the evidence may justify. (*Stevens* v. *Shannahan*, 160 Ill. 330; *Stone* v. *Salisbury*, 209 id. 56.) "As on trials of feigned issues the same strictness is not required as in suits at law regularly brought to issue and do not settle and bind the rights of the parties,

the chancellor will order new trials until he is satisfied or will assume the responsibility of deciding the cause against the verdict." (*Waddams* v. *Humphrey,* 22 Ill. 661.) Here the chancellor was satisfied by the verdict or he would have decided against it or ordered a new trial.

It is claimed that the appellants are innocent parties, who bought for value relying upon the title shown by the record. The forged deed, of course, conveyed no title, and the mere recording of it gave it no added authority. The only theory upon which the appellants could be held entitled as against the appellee would be, that the latter, by her conduct after discovering the forgery, estopped herself from questioning the validity of the deed. The evidence justified the chancellor in believing that the appellee did not suspect the existence of the deed until after the appellants had closed their purchase of her property on March 8. She proceeded toward the consummation of her contract of exchange, and was not even furnished with the certificate showing the condition of the title of the Ferguson property until after March 8, for it was dated March 12. Her representative, Adler, made his examination of the records of Effingham county on March 28 or 29. Butler's letter to her did not purport to give her specific information but his understanding that she had sold her place. She knew that she had agreed to its sale, and that might very well have been the basis of Butler's understanding. Appellants relied entirely upon the record of the title and made no inquiry of the appellee, nor did they require the production of the deed upon which the record title was based. In this they may not have been negligent, but it was the record title upon which they relied and not upon any act of the appellee.

The decree of the circuit court is affirmed.

*Decree affirmed.*