SHEA v. LANDIS et al.—124 S. W. (2d) 284.

Middle Section. November 19, 1938.

Petition for Certiorari Denied by Supreme Court, February 4, 1939.

Robert Lusk, Andrew Ewing, and D. L. Lansden, all of Nashville, for appellants.

Guild & Guild, of Nashville, for appellee.

FAW, P. J. This case has been brought to this Court by the appeal of two of the defendants below, E. B. Harpole, Trustee, and Miss Doll Judkins, from the decree of the Chancery Court of Davidson County, Part Two, by which decree the complainant, W. W. Shea, was granted the relief sought by his bill.

For the purposes of the consideration of appellants' assignments of error, the issues arising on the record and the facts disclosed by the proof are sufficiently stated in the memorandum opinion of the learned Chancellor filed in the cause, which is as follows:

"The bill in this case seeks to restrain the defendant Landis from encumbering the property involved with any lien superior to com-

plainant's lien and the defendant Lindsley, Trustee, from transferring, disposing of or enforcing the note and trust deed against said property, and to purge and reform the alleged forged clause in the mortgage from defendant Landis and wife to complainant and declare the same inferior to complainant's lien. The bill is answered and the material allegations challenged and denied.

"It is disclosed by the proof that the defendant, Robert E. Landis, who was a real estate agent in Nashville, Tennessee, procured from the complainant the listing of the property involved, with him for sale. He subsequently informed complainant that he would like to purchase this property himself, to which complainant assented. Upon ascertaining that complainant had no regularly retained attorney, Landis suggested that he be allowed to prepare the necessary papers to carry out the transaction and this was agreed to by the complainant.

"On October 14, 1934, Landis submitted to the complainant, for his approval, a warranty deed for the conveyance of the property by complainant to him and a separate trust deed securing to complainant the unpaid balance of the purchase price. The terms of the sale provided for the payment of $400.00 cash and the balance in five annual installments. At the time said instruments were shown to complainant, the trust deed had not been executed or acknowledged. Complainant examined the trust deed thoroughly on said day and noticed the omission of the provision for the payment of interest in semi-annual installments, and called this omission to the attention of said Landis. Landis took both instruments and on the following day, October 15, 1934, returned with them to the complainant. The warranty deed was thereupon executed on that day by complainant and his wife, and Landis showed complainant that he had corrected the omission in the trust deed with reference to the payment of interest in semi-annual installments and complainant did not examine the instrument closely. At that time said trust deed had been executed by Landis and wife. Complainant and said Landis thereupon, on the same day, went to the courthouse and Landis gave the trust deed to someone in the Register's Office to be recorded.

"Approximately three days later complainant called at said Register's Office to get the trust deed and was informed that said Landis had taken it and receipted for it. He thereupon called at Landis' office and Landis indicated to him that he had mailed said trust deed to him. Complainant did not receive the trust deed and he called on Landis several times thereafter to no avail. Landis finally told him that he would procure a certified copy for him, but this was never done.

"On November 8, 1934, a deed of trust was executed by Robert E. Landis and wife conveying the land involved to John T. Lindsley, Trustee, to secure a note in the principal amount of $1500.00, and said deed of trust was recorded on November 9, 1934.

"On or about the first of February, 1935, the complainant learned through Mr. Robert Lusk, one of the attorneys representing John T. Lindsley, Trustee, of the above mentioned deed of trust to John T. Lindsley, Trustee, and upon investigation of the records in the Register's Office ascertained that the deed of trust securing the balance of the deferred purchase money to him contained the following provision which he had not until that time seen:

" 'Said notes are to be second to a first Mortgage, not to exceed two thousand dollars, which may hereafter be placed upon the within described property.'

"By section 10979 of the Code of Tennessee, forgery is defined as follows:

" 'Forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights.' And in the following section of the Code it is provided in substance that any person who fraudulently passes or transfers, offers to pass or transfer any forged paper, knowing it to be forged with intent to defraud, is guilty of a felony.

"In the case of Garner v. State, 73 Tenn. (5 Lea), 213, page 216, Judge Cooper speaking for the Supreme Court in substance held: That the Code definition of forgery was the common law definition of that offense and would cover any form of the crime recognized by the common law which treated forgery as a cheat or attempt to cheat; and that forgery denotes a false making which includes every alteration or addition to a true instrument . . . a making malo animo of any legal instrument for the purpose of fraud and deceit and that any alteration of a written instrument whereby its legal effect is varied, will constitute the offense. . . .

"To constitute forgery, three things must exist:

" (a) There must be a false making or alteration of a written instrument.

" (b) There must be a fraudulent intent, and (c) The instrument must be apparently capable of effecting a fraud. 26 Corpus Juris, Sec. 4, p. 897. On this page of Corpus Juris, note (c), Bacon is quoted as defining forgery as follows:

" 'The notion of forgery doth not so much consist in the counterfeiting of a man's hand and seal . . . but in the endeavouring to give an appearance of truth to a mere deceit and falsity, and either to impose that upon the world as the solemn act of another which he is in no way privy to, or at least to make a man's own act appear to have been done at a time when it was not done, and by force of such falsity to give it an operation which in truth and justice it ought not to have. . . .'

"Coke lays down the doctrine in substance that an offender may be guilty of a false making of an instrument although he signed and executed it in his own name, in case it be false in any material part

and calculated to induce another to give credit to it as genuine and authentic, when it is false and deceptive.

"Bishop on Criminal Law (9 Ed.), sec. 584, p. 451.

"This doctrine has not apparently received much American adjudication, though in note four to Sec. 585, p. 452, Bishop stated:

" 'Luttrell v. State, 85 Tenn., 232, 1 S. W., 886, 4 Am. St. Rep., 760, would seem, however, to be a pretty direct affirmance of the English doctrine; it holds that a justice of the peace may commit forgery of a bill of costs due to himself and subscribed by his own name.'

"In this same section under sub-division 3 thereof, the author states that the broad doctrine is not maintainable that a man cannot commit forgery of an instrument executed by himself. See p. 454.

"In the case of Luttrell v. State, 85 Tenn., 232, page 234, 1 S. W., 886, page 887, 4 Am. St. Rep., 760, Luttrell was a Justice of the Peace and was indicted and convicted for forging a bill of costs by incorporating and making out in his costs against the County of Knox, an item of cost for $10.95 which was false, fraudulent and felonious, and made and uttered to the prejudice of Knox County. It was insisted that no offense was charged and that a man could not be guilty of forgery in making a paper writing and signing his own name to it.

"The Supreme Court said:

" 'Neither of these positions is tenable. As to the first, we need only say that the charge is made with such degree of certainty as to enable the court to pronounce a proper judgment in case of conviction. Of this there can be no doubt, and that is all that is required. Code (M. & V.) 5946. The answer to the second is equally obvious and easy. By our statute "forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights." Code, 5492. Forgery is one class of common-law cheats, and is by Bishop defined as "the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." . . .

" 'Manifestly, the bill of costs alleged to have been forged by Luttrell is a "writing" within the scope of the definition given. It is a writing authorized, and in fact required, by law, to entitle a justice of the peace to receive payment of his costs in criminal cases. Code, 6450. His bill of costs is his demand for service rendered in legal proceedings before him. If it be genuine, it has undoubted "legal efficacy," and is "the foundation of legal liability;" and if it be in due form, though not genuine, it may, and will, if used, operate "to the prejudice of another's rights,"—in civil cases to the prejudice of the person against whom the costs are assessed; and in criminal cases, where the judgment is for the defendant, to the prejudice of the county. . . .

" 'Lord Coke says that "forgery is properly taken when the act is done in the name of another person." Yet there is a doctrine, stated also by Coke, which seems to rest on ancient adjudication, and is sustained by the English commissioners in their report of 1840, namely: "that (to use their own language) an offender may be guilty of a false making of an instrument, although he sign and execute it in his own name, in case it be false in any material part, and calculated to induce another to give credit to it as genuine and authentic."

" ' A conclusive illustration and demonstration of the fact that one may, in his own name and over his own signature, make a writing to the prejudice of another's rights, are shown in the case before us.'

"In Abston v. State, 134 Tenn., 604, page 610, 185 S. W., 706, page 707, our Supreme Court ruled:

" 'Not only is the recording of a forged deed an uttering thereof, but so is the attempt to raise money on it, or making any other beneficial use of such an instrument.'

"The cases of Hill v. State, 9 Tenn. (1 Yerg.), 76, 24 Am. Dec., 441, and Austin v. State, 143 Tenn., 300, 228 S. W. 60, 14 A. L. R., 311, are neither decisive of the issue presented by this case. In the Hill case the party procured the signature to the note by fraudulently reading it for the real amount due, when in fact it contained a larger amount and procured the signature thereto by reason of such false representation. It was the genuine signature of the party to the note. And in the Austin case he procured the signature of the person to a deed by representing it to be an affidavit. In neither of these cases had the party who signed the paper had the paper in his possession and approved it before signing, and in both cases he was induced to sign by false representations. In the case at bar the mortgage from the defendant Landis and wife, to the complainant, was exhibited to the complainant the day before it was put to record, and just preliminary to its execution. At this time it did not contain the forged clause. The complainant read the paper over, evidently carefully, because he discovered that the interest payments were annual instead of semi-annual, and he asked that this correction be made. The mortgage was given back to Landis for correction in the particular named, and for execution. The next day, and when the papers were placed of record, Landis offered to exhibit to the complainant the mortgage with the correction, stating that he had made it. This mortgage had been formally approved and accepted by complainant, except for the correction as to the interest payments, the day before, and between that time and the next day, when the mortgage was exhibited, Landis changed it. This constitutes forgery under our Code definition of forgery, and under the principle recognized and given force in the case of Luttrell v. State, supra.

"That the title to property cannot be taken away by theft, is a principle well established, and although the mortgage was recorded with this forged provision therein, Lindsley acquired no title superior to complainant's title. Sec. 1246, page 739, Vol. 2, Jones on Mortgages, 8 Ed.; Sec. 726, Devlin on Deeds, Vol. 2, 3 Ed.; Oswald v. Newbanks et al., 336 Ill., 490, 168 N. E., 340, page 343.

"The Court is of opinion that the defendant, Robert E. Landis was guilty of forgery by inserting the clause involved in the mortgage after it had been read over and accepted by the complainant; that the recording of this mortgage with the forged clause therein was no protection to Lindsley, Trustee, nor to the beneficiary under the trust deed to him, and that the indebtedness secured by such deed of trust is inferior and subject to the lien for the deferred purchase money notes secured by the mortgage executed by Robert E. Landis and wife to the complainant should be purged of said forged clause therein, and declared superior and paramount to the lien held by Lindsley, Trustee, on the property involved.

"Decree accordingly.

"Newman, Chancellor."

It should be stated that John T. Lindsley who, as Trustee, was a defendant below, died while the cause was pending in the Chancery Court, and Mrs. E. B. Harpole was duly substituted as trustee in the place and stead of said John T. Lindsley, and the cause was, by consent and by order of the Court, revived against said Mrs. E. B. Harpole, Trustee.

Pursuant to the foregoing findings and opinion of the Chancellor, a decree was entered adjudging (a) that the mortgage executed by Robert E. Landis and wife, Pauline A. Landis, to the complainant on October 15, 1934, etc., be purged of the following clause therein: "Said notes are to be second to a first mortgage, not to exceed two thousand dollars, which may hereafter be placed upon the within described property," said clause being a forgery and of no effect; (b) that the deed of trust executed by Landis and wife to John T. Lindsley, Trustee, on said property to secure the payment of a fifteen hundred dollar note to Miss Doll Judkins, is a valid deed of trust on the said property covered thereby, but secondary to the mortgage of Robert E. Landis and wife to the complainant.

The costs of the cause were adjudged against Robert E. Landis and wife, Pauline A. Landis, for which execution was awarded.

The defendants, Doll Judkins and E. B. Harpole, Trustee, excepted to the foregoing decree and prayed an appeal to this Court, which was granted by the Chancellor and perfected by said appellants.

The appellants' assignments of error are four in number, but, in their final analysis, they are all directed to the proposition contained in the first assignment, which is, in substance, that the Trial Court

512

erred in decreeing and adjudging that the lien of the deed of trust held by complainant Shea is superior to the lien of the deed of trust held by defendant Harpole, Trustee, and Miss Doll Judkins.

Notwithstanding the clear statement of the facts and the able discussion of the law of forgery by the learned Chancellor, we are unable to agree with his conclusion that, upon the facts of this case, the appellee's lien is superior to the lien of the appellants. To so hold does not, in our opinion, give effect to the presumption arising from our registration laws, Code, Section 7664 et seq., Shannon's Code, Section 3748 et seq.

The presumption, as a matter of public policy, must always be in favor of the bona fides of a deed as it is registered, and it is incumbent upon the defendant to show that the alterations appearing on the instrument were made after delivery. Branch v. Branch, 143 Tenn., 210, 225 S. W., 1038, 1040.

It is clear that the clause which gave rise to this litigation was in the trust deed executed by Landis and wife when it was delivered to Shea. The proof does not indicate whether it was or not in said trust deed when it was signed and acknowledged by Landis and wife.

The case of Branch v. Branch, supra, involved a question of alleged forged alterations in a deed, and, after stating that the authorities on the subject are in irreconcilable conflict, the Court adopted the rule above stated, and, in concluding the opinion, the Court said:

"We think, therefore, as a matter of public convenience and safety, we must presume, when an altered deed appears to be registered as altered, such altered instrument expresses the true intention of the parties and that such alterations were made before delivery.

"Otherwise, under our prevailing course of business, when little attention is paid to the preservation of registered instruments, such papers might readily be picked up and mutilated, and those who have rested for years on the security of recorded titles be put to serious inconveniences. After the lapse of years, as in this case, it would frequently be impossible for one with record evidence of title to land to prove when alterations in title papers were actually made. A presumption that alterations in such documents were made after delivery, and before registration, and that the recorded instrument was invalid, would be contrary to the whole policy of our registration laws."

We think it is a necessary corollary of the principles enunciated in the Branch case, supra, that, having accepted delivery of the Landis trust deed, with the reservation in question therein, and procured its registration in that form, complainant Shea cannot successfully assert that his mortgage is superior to the trust deed for the benefit of Miss Judkins, who, in good faith, relied upon the mortgage of Landis to Shea as it appeared on the Register's books. To hold otherwise "would be contrary to the whole policy of our registration laws."

It results from the views we have stated that the appellants' assignment of error aforementioned is sustained, and the decree of the Chancery Court will be reversed in so far as it is thereby adjudged that the deed of trust executed by Robert E. Landis and wife, Pauline A. Landis, on November 8, 1934, to John T. Lindsley, Trustee, and registered in Book 783, page 633, in the Register's Office of Davidson County, Tennessee, to secure the payment of a note of fifteen hundred dollars payable to Miss Doll Judkins, is secondary to the mortgage of Robert E. Landis and wife to the complainant W. W. Shea, recorded in Book 959, page 33 of the Register's Office of Davidson County, Tennessee; and it will be adjudged and decreed that both said trust deed and mortgage are valid liens on the property therein described, but that said trust deed to secure the payment of the note to Miss Doll Judkins is superior to the aforesaid mortgage of Landis and wife to complainant W. W. Shea, and entitled to prior satisfaction out of the property therein described.

The costs of the appeal will be adjudged against the appellee, W. W. Shea, and the surety on his cost bond in the Chancery Court. Gulf Refining Company v. Frazier, 15 Tenn. App., 662, 704.

Crownover and Felts, JJ., concur.