# The State v. Bristol Savings Bank.

*Action against Foreign Corporation for doing Business in State without having an Agent &c., therein.*

1. *Foreign corporation; doing business in this State.*—The loan of money here, by a foreign corporation, secured by a note and mortgage here executed on lands situated in this State though but one transaction is made, is, regardless of the place where the notes are payable, doing business in this State within the meaning of the constitution ; and the act to enforce the same found in Acts 1886-87 p. 102.

[The State v. Bristol Savings Bank.]

2. *Agency; evidence of.*—The testimony of a witness introduced without objection, that he was, or was not the agent of a person, is but the conclusion of the witness, and should amount to nothing with the jury unless borne out in their opinion by all the evidence bearing on the question.

3. *Same.*—The fact that a borrower executes a contract by which he constitutes a person his agent for the purpose of securing him a loan, does not, in an action by the State against a foreign corporation for doing business there without having an agent and known place of business therein, preclude the plaintiff from showing that such person really acted as the agent of the lender.

APPEAL from Chambers Circuit Court.

Tried before the Hon. N. D. DENSON.

This action was begun by attachment by The State against the Bristol Savings Bank, a foreign corporation, to recover of it a penalty for doing business here without having filed in the office of the Secretary of State a certificate designating an agent and a place of business as prescribed by the act to enforce Section Four of Article Fourteen of the constitution, approved February 28th 1887.

The plaintiff proved that the defendant was a foreign corporation, organized under the laws of Connecticut, and having its place of business at Bristol, in that State. That they had filed no certificate in the office of the Secretary of State; that in December 1888, it had loaned one George A. Dyer a sum of money, taking his note therefor, secured by a mortgage on lands in Chambers County Alabama. It was shown that the transactions as to this loan were all between Dyer and one E. M. Oliver.

Oliver testified that before any application for a loan by Dyer, he, Oliver, had made arrangements with one C. P. N. Barker of Atlanta, Ga., to take for the latter, applications for loans in Chambers County. That after this, Dyer made application to him for the loan secured by the mortgage, which he forwarded to Barker, and at the same time took a communication addressed to Barker and signed by Dyer, by the terms of which the former was constituted the agent of the latter in the premises, containing stipulations, 1st that the lien was to be secured by mortgage on Dyers land, the mortgage to be a first lien, and to contain such conditions as are usually exacted by agents making similar loans; 2d

to pay Barker a stipulated sum as commissions for negotiating the loan; 3rd to pay off all liens on the land, to insure the buildings thereon, and to send the "loan less commissions, to my agent E. M. Oliver." He also testified that he acted in the matter as agent of Dyer, and that during the whole negotiation, the defendant was not in Alabama by itself or any agent. This witness examined and prepared an abstract of title to the land, recieved and forwarded to Barker the notes and mortgage of Dyer, received and paid the money to him, and did other acts as set out in the opinion. It was also shown that the borrower, Dyer, was notified of the accrual of interest by letters mailed him from Atlanta, signed by Barker, and that all payments on the debt were made to Barker by him. The notes were made payable to the defendant at Barker's office in Atlanta. All written communications made by Oliver were signed by him as "correspondent." He testified that he was the correspondent of Barker, and that of no one else.

There was no evidence to show a connection of the defendant with any other business in this state.

Upon the request of the defendant, the court gave the affirmative charge in its favor, and the State appealed.

W. H. THOMAS, for appellant.—The making of a single loan by defendant, secured by mortgage on lands here, is "doing business" in this state.—*Guin v. N. E. Mtg. Sec. Co.* 92 Ala. 135; *Farrior v. N. E. Mtg. Sec. Co.* 88 Ala. 275; *Mullens v. Am. F. L. & M. Co.* 88 Ala. 280:

The constitution, in writing, of Barker as his agent by Dyer, does not preclude inquiry as to whether he was agent of defendant.—*Larson v. Lambard, Inv. Co.* 53 N. W. Rep. 179.

The defendant was connected with the business done in this state, and could act only by agents; they must have ratified the acts of Barker and Oliver, as those of their agents.—21 S. W. Rep. 624.

No brief for appellee come to reporter.

McCLELLAN, J.—This is an action prosecuted by the State against the Bristol Savings Bank, a foreign corporation, for the recovery of the penalty prescribed by the act of 1887, "To give force and effect to section four of article fourteen of the constitution of Alabama,"

it being alleged that said corporation did business in this State without having complied with the provisions of that act.—Acts 1886–87, pp. 102–4. There is no question that the evidence adduced went to show every fact essential to a recovery unless it be that there was failure of proof of the main fact that the defendant did business in this State. The judge of the trial court thought there was no evidence of this fact, and upon that theory gave the affirmative charge for the defendant. We think he reached a wrong conclusion in this regard, and erred in giving the general charge against the State.

The business upon the doing of which the plaintiff relied for a recovery was the loan of money by the defendant to a resident citizen of this State, and the taking of a mortgage upon land of the borrower situated in this State to secure the debt, which was evidenced also by promissory notes, with separate notes for instalments of the interest. Under the constitution and the statute a single act of business done, without complying with the prescribed conditions, is a violation of both: there need not be a *carrying on* of business. The loan of money here and the taking here of notes and mortgage to secure repayment, the mortgage being on land situated in this State, is the doing of business here within both the constitution and the statute.—*Guin v. New England Mortgage Security Co.* 92 Ala. 135 ; *Farrior v. New England Mortgage Security Co.*, 88 Ala. 275 ; *Mullens v. American Freehold Land Mortgage Co.*, 88 Ala. 280. And the facts that the notes and mortgage are executed here, though they may be payable elsewhere, and the land embraced in the mortgage is situated here, are sufficient to show *prima facie* that the transaction involves the doing of business by the lender and mortgagee in the State of Alabama.—*Farrior v. New England Mortgage Security Co.* 88 Ala. 275 ; *Mullens v. American Freehold Land Mortgage Co.*, 88 Ala. 280. There is evidence of both these facts in this record, and it follows that the plaintiff made its *prima facie* case against the defendant. The witness Oliver for the defendant testified without objection that he, as the agent of the borrower, negotiated the loan outside of the State and that in respect of it he was not the agent of the defendant. These are conclusions of the witness. If they are not borne out by the facts of

the transaction in the judgment of the jury properly instructed by the court as to what constitutes agency, the conclusions amount to nothing; or, to state the proposition differently, the jury must look to all the evidence bearing upon the question of agency including the conclusion of Oliver received without objection that he was not defendant's agent in ascertaining whose agent he was, and there may be other facts which will justify them in reaching a different conclusion than that reached by the witness. There is also a contract in evidence by which the borrower formally constitutes one Barker his agent to negotiate the loan, the application being forwarded by Oliver to Barker. But notwithstanding this it was open to the plaintiff to show that Barker really acted as the agent of the lender.—*Larson v. Lombard Investment Co.*, 53 N. W. Rep. 179. Indeed in this very paper, contract or application which is relied on as constituting Barker the agent of the borrower, there are stipulations of manifest benefit to the lender to which it is proper for the jury to look in determining whether Barker was not also, in a sense and to some extent, the agent of the defendant. Such for instance as the following: "said mortgage  *  *  *  *  to contain such conditions as are usually exacted by agents who negotiate five year loans in this State." Barker was an agent negotiating a five year loan, and it is a little incongruous that he, solely as the agent of the would be borrower should exact of his principal for the benefit of the lender whose agent he was not at all, according to the theory of the defense, conditions which agents usually exact from their principal, while acting for their principal for the benefit of a stranger. And so there are stipulations that the borrower's agent shall pay off all prior liens and shall insure the property for the better security of the stranger with whom he is theoretically dealing at arm's length solely in the interest of his principal. These are circumstances, it may be of light importance, for the consideration of the jury. And it is shown clearly that Barker was the agent of the defendant in the management and collection of the loan.

In the testimony of Oliver it was made to appear that he, while professing to act only for the borrower, did several things in Alabama which were in no sense incumbent on the borrower, nor to his advantage, but

[The State v: Bristol Savings Bank.]

which were to the advantage and essential to the security of the Bristol Savings Bank ; and other things of this nature he did confessedly not as the borrower's agent, but as the "correspondent" of Barker, and these acts were not within the terms of the borrower's appointment of Barker as his agent.    For instance, he was required by Barker after the loan had been accepted, the papers signed and the money paid in to his hands, "to re-examine the records of the courts, and he did re-examine the records of the courts to see that the lien given by the mortgage was perfect ;" and he testified that if the records had not been clear "he would and could have refused to have paid over the money to Dyer, the borrower, "and that it would have been his duty to so have refused."    And so, for further example, Oliver testified that one of the papers made out at the time of Dyer's application, he had signed, "E. M. Oliver, correspondent," and that he "had to examine the lands offered by Dyer as security, and that he did see the lands, and reported as to security, values of land, buildings and improvements on the same to Barker, and in which report, he reported as "correspondent," all which was without Dyer's request.    These are but instances of the evidential circumstances which cropped out in the testimony of Oliver to be considered by the jury in determining whether the *prima facie* case made in the outset for the plaintiffs had been overturned by the testimony adduced for the defendant.    However strong or weak they may be—and upon that nothing we have said must be taken as indicating any opinion on our part—they constituted some evidence to go to the jury as tending to show that Barker and Oliver were in some sort the agents of the defendant in this transaction, in such sense as that what they did here was the doing of business in Alabama by the Bristol Savings Bank.    The affirmative charge took all this away from the jury : it should have been submitted to them.—*Jesson v. Texas Land & Loan Co.*, 21 S. W. Rep. 624.

For this error the judgment of the circuit court is reversed.    The cause is remanded.