[Presnall v. Burgess & Co.]

# Presnall *v.* Burgess & Co.

### Bill for an Accounting, and to Restrain Foreclosure of Mortgage.

(Decided April 23, 1913.  61 South. 804.)

1. *Mortgages; Foreclosure; Redemption; Bill.*—Where the bill alleged the execution of certain mortgages which the mortgagees were proceeding to foreclose, the bill possessed equity as a bill to redeem where it charged that one of the mortgages was intended as additional security for the sum furnished by the mortgagee to effect a transfer of the other mortgage, all of which were for the same debt, and that the mortgagees claimed a sum as secured by the mortgage largely in excess of that which was justly due, and were endeavoring to force payment of debts not embraced in or secured by the mortgage, that the property was many times more valuable than the secured indebtedness, that the secured indebtedness was much less than the amount claimed by the mortgagee, and that the mortgagor was ready and willing to pay whatever was justly due.

2. *Same.*—Where the bill to redeem did not show that the entire amount secured by the mortgage had been paid or tendered, the pendency of the suit to redeem did not suspend the power of sale vested in the mortgagee by the mortgage, his successors or assigns, although the bill offers to do equity by paying the ascertained amount secured by the mortgage.

3. *Same; Power of Sale.*—The power of sale in a mortgage is a power coupled with an interest which cannot be suspended or revoked at the will of the mortgagor without the consent of the person secured.

4. *Same; Sale.*—Where the amount secured by certain mortgages had not been fully satisfied or full tender made, a proper sale under the power passed the unqualified title, though made after the filing of the bill to redeem.

5. *Same; Indebtedness; Adjustment; Vacation.*—Where prior to the foreclosure the mortgagor in writing admitted that he was indebted in the sum of $1,750.28, with interest from January 21, 1908, on a certain mortgage and in consideration of an extension to October 1, following, he promised to take up the mortgage on that date in full, such an admission constituted an adjustment of the account, and would not be set aside or reopened except for fraud or mistake.

6. *Homestead; Mortgage; Execution Before Marriage.*—Where an unmarried debtor executed a mortgage upon land, he is not entitled to claim homestead exemptions in the land, notwithstanding the mortgagor married before the foreclosure.

APPEAL from Clarke Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by C. W. Presnall against D. R. Burgess & Company, and the individuals composing the firm, for an accounting and to restrain the foreclosure of certain mortgages. Decree for respondents and complainant appeals. Affirmed.

WILLIAM D. DUNN, for appellant. The mortgage exhibit C provided that it was to secure this note, and any other amount owed in 1899, and is broad enough to cover every character of indebtedness accruing that year.—*Collier v. White*, 97 Ala. 615. But the chancellor overlooked an important fact in failing to observe that the notes were signed by the husband alone, and although there may be an equitable mortgage on the land other than the homestead. they cannot be held of legal operation as a conveyance to the homestead.— *Butts v. Broughton*, 72 Ala. 294; *Henderson v. Kirkland*, 127 Ala. 185; 115 Ala. 563; 137 Ala. 199. Burgess was not competent to testify as to the custom among commission merchants.—6 Enc. of Evidence.

GREGORY L. & H. T. SMITH, and R. H. SMITH, for appellee. Presnall was not entitled to an accounting. —*Walker v. Driver*, 7 Ala. 679; *Langdon v. Roon*, 6 Ala. 518; *Security L. Assn. v. Lake*, 69 Ala. 456; *Kilpatrick v. Henson*, 81 Ala. 464; 2 Mayf. 19; 3 Mayf. 199. Equity will not inquire into accounts after a settlement.— *Sloan v. Guice*, 77 Ala. 394; *Kilpatrick v. Henson, supra; Ga. H. I. Co. v. Warten*, 113 Ala. 479. Equity will set off mutual debt, and where parties have agreed that mutual demands shall satisfy each other, equity will enforce the settlement.—*Renfroe v. Yarbrough*, 144 Ala. 487; *Tate v. Evans*, 54 Ala. 16; *Simmons v. Williams*, 27 Ala. 509; 19 Enc. P. & P. 725. The pendency of the bill for an accounting did not affect the

sale or its validity.—43 N. E. 350. The power to sell was part of the security.—Sec. 4896, Code 1907. Such power was not revoked by subsequent acts of the mortgagor without the consent of the party secured.—27 Cyc. 1452. The fact of marriage after the execution of the mortgage did not vest homestead rights in the wife as against the mortgagee.—Sec. 1354, Code 1907; 105 S. W. 255. No homestead rights attached to the surplus fund from the sale of the mortgaged property.—Sec. 4188, Code 1907; *Moses Bros. v. Home B. & L. Assn.,* 100 Ala. 407; *Webber v. Short,* 55 Ala. 311. The bill, therefore, is without equity except as a bill for redemption, and hence, the court properly declined to enjoin the sale. —*Sec. L. Assn. v. Lake, supra; Caldwell v. Caldwell,* 166 Ala. 406.

McCLELLAN, J.—Prior to February 19, 1906, C. W. Presnall (complainant) had executed to E. H. Bixler two mortgages—one to secure a note for $700 and one for $800. Real and personal property was covered by them; the real property being that here involved. On that date by agreement with Presnall, upon the payment of $1,500 to Bixler, Burgess & Co., had those mortgages transferred to them. On that date (though acknowledged the next day) Presnall executed a mortgage for $1,500 to Burgess & Co. In this instrument it is recited in referring to the note due November 1, 1906, it was given to secure: "For the sum of $1,500.00, advanced and delivered to me in supplies of provisions, cash, material, etc., to enable me to make a crop of cotton," etc. Further on it is also recited therein: "The fee-simple title to the said described property' and the said paragraph should read as follows: 'The fee-simple title to said described property is vested absolutely in me and I hereby warrant that there is no prior mort-

gage, nor prior lien, nor any incumbrance of any kind or description, upon said property, except to E. H. Bixler, which I expect to have transferred to the said D. R. Burgess & Co. Said advances are made to me by said D. R. Burgess & Co., upon the faith and credit of this warranty." It is also provided in this mortgage to Burgess & Co. that it should secure the payment of advances of supplies and money made "during the present year" (1906) in excess of the amount of the $1,500 note. It is also provided in that mortgage that the mortgagee might purchase at the foreclosure sale therein above described. At the time these transactions took place, as well as when the Bixler mortgages were executed, Presnall was unmarried. During the winter of 1904-05 Presnall became indebted to Burgess & Co. in the sum of $264.81. This indebtedness existed when the mentioned mortgages were transferred, and when the $1,500 mortgage to the company was executed. On March 26, 1907, Presnall was married.

In the process of foreclosing the two Bixler mortgages, of which they were the transferees, and the $1,500 mortgage executed to them by Presnall, Burgess & Co. gave notice that sales for that purpose would be had on March 22, 1909. On March 12, 1909, the original bill in this cause was filed by Presnall against the firm of Burgess & Co. It exhibited therewith in copy the three mortgages mentioned and the notice of their foreclosure under the power of sale in each provided. The more material averments are these: That the transfer of the Bixler mortgages as described was effected by agreement of the complainant and respondents and Bixler; that respondents honored complainant's draft, for the $1,500, consideration of the transfer; that complainant executed to respondents the mortgage of February 19, 1906, which was intended as additional security for

the sum furnished by the defendants to effect the transfer of the Bixler mortgages; that all three of the mortgages were for the same debt; that the only other sum or value advanced or received by complainant from respondents during the year 1906 was $25 (which, as we have indicated before, was secured by the clear provision of the mortgage made to respondents on February 19, 1906); that the respondents claim a large sum due them upon the debt or debts secured by these mortgages, but that this claim is excessive, and is largely not justly due; that respondents are endeavoring to enforce the payment of debts not embraced in the debt for which the mortgages were given as security; that the mortgage debt or debts was or were not to bear interest until maturity, notwithstanding which interest was computed and claimed upon the note of February 19, 1906, as appears from a statement of account presented to complainant by the firm on February 14, 1907; that the property described in the mortgages was many times as valuable as the true indebtedness; and that complainant does not know the true amount due upon the mortgages, but that it is greatly less than the amount claimed by respondents. The bill also contains the following: "And your orator further showeth unto your honor that he is ready and willing to pay whatever amount may be found due, as may be directed by this honorable court, and he therefore submits himself to the jurisdiction of this honorable court."

The special prayer is for an accounting to ascertain the indebtedness between the parties, and that upon payment of complainant the mortgages be surrendered and canceled. It was also prayed that a temporary injunction issue restraining the foreclosure of the mortgages, and upon final hearing that the injunction be made permanent. There is a prayer for general relief.

The injunction prayed was not issued; the bond exacted not having been made by complainant. At the foreclosure sale the property was sold for $1,973.72—the amount of the indebtedness, including cost, attorney's fee, and interest claimed by respondents. The respondents answered, and constituted the sixth paragraph thereof the substance of their cross-bill. The following letter, signed by complainant on February 14, 1908, is set forth in the paragraph: "I am due you $1,750.28 with interest from Jan. 21, 1908, on my mortgage dated Feby. 19, 1906, recorded in Clarke county 6th day of March, 1906. Now, in consideration of the fact that you are willing to extend this mortgage for me with interest to October 1, 1908, I hereby agree and promise to take up said mortgage in full on 1st of October, 1908."

It is alleged that on the occasion of the signing of the letter the respondents rendered complainant a statement of his account to that date, to the correctness of which he agreed, wherein the net indebtedness stated in that letter was shown as the result from itemized debits and credits. It is also averred in this paragraph: "Under the facts aforesaid, the defendant is advised and claims that the balance of the proceeds of the sale of said mortgage property over and above the indebtedness secured, according to the terms of the mortgage, as written upon the face thereof, and the costs and expenses of the sale, and the said tax which the defendant had a right to pay to protect his interest in said mortgage and the rights of subrogation thereto was by said agreement of the defendant authorized to be deducted from the proceeds of said sale, and that there was out of said proceeds only the sum of $3.65 which the defendant did not have the right, either by the terms of said mortgage, the right of subrogation or said agreement to de-

duct from the proceeds of said mortgage, but, if mistaken in this, he still here claims that complainant is indebted to him in a sum equal to the difference between the amount secured by said mortgage and said entire indebtedness, and he hereby claims the right to offset such indebtedness against any balance of the proceeds of the sale of said property for which he would otherwise be liable to the defendant." The answer to the cross-bill, while wholly failing to impute to respondents or either of them any degree of fraud in inducing the signature of the letter of February 14, 1908, denied the correctness of the amount of the net indebtedness therein stated.

Subsequently, on August 29, 1910, the original bill was amended by the addition thereto of paragraph 9, which reads: "Complainant respectfully shows unto your honor that he has lived upon and occupied as his homestead for practically all of his life the land described in Exhibit C to the bill of complaint filed in this cause. That he was married on March 26, 1907, and he and his wife have resided upon and occupied as their homestead said land ever since their marriage. He has resided upon and occupied as his homestead, and will claim as exempt to him as such homestead, all the land described in said Exhibit C as being in section 10, T. 8 R. 4, E.; also the S. W. ¼ of S. W. ¼ and 12½ acres, the exact description of which he is not able to give at this time, but which is in the south part of the N. W. ¼ of S. W. ¼ of section 11, T. 8, R. 4, E., in Clarke county, Ala." The following admission, signed by the solicitors for respondents, was filed in the cause August 31, 1910: "Defendants agree that on the trial of the above-entitled cause they will admit that C. W. Presnall lived with his wife on the land described in the bill of complainant on February 14, 1908; that

the said C. W. Presnall also lived on it at the time he executed the mortgage to E. H. Bixler, which is marked Exhibit A in the bill of complaint, and continued to live upon it until the time of his marriage; that it was the homestead of the said C. W. Presnall on February 14, 1908."

After restating in the answer to the amended bill the substance of the admission quoted, it is averred in this answer: "But defendants deny that the complainant has any homestead rights in this land, and deny that complainant has any right to claim said lands or any part thereof as exempt to him. The respondents pray that this answer may be taken as an amendment of its answer and cross-bill heretofore filed in this cause, and be made a part of their cross-bill."

That the original bill possessed equity as a bill to redeem is clear we think; and, under this theory, the ascertainment of the true amount of the indebtedness was an essential element of the relief the bill so sought.— 2 Jones on Mort. § 1094; 17 Ency. Pl. & Pr. p. 964; *Smith v. Conner,* 65 Ala. 371; *Higman v. Humes,* 133 Ala. 617, 32 South. 574. But while the bill was pending the foreclosure sale under the power was effected; the temporary writ of injunction, to restrain that action pendente lite, not having issued because of the failure of the complainant to make the bond prescribed in the fiat.

Where the bill does not show that the entire amount for which the mortgage affords security has been paid or tendered, the pendency of the cause to redeem will not suspend the right to exercise the power of sale vested by the mortgage in the mortgagee, his successors or assigns, notwithstanding the bill offers to do equity by satisfying the ascertained sum secured by the mortgage. —2 Jones on Mort. § 1906, pp. 863, 864; *Stevens v.*

*Shannahan,* 160 Ill. 330, 43 N. E. 350; *Ryan v. New-comb,* 125 Ill. 91, 16 N. E. 878. The rule is different in Massachusetts where statutes control the matter.—*Way v. Mullett,* 143 Mass. 49, 8 N. E. 887; *Clark v. Griffin,* 148 Mass. 540, 20 N. E. 169.

The power of sale in a mortgage is a power coupled with an interest—that cannot be revoked or suspended at the will of the mortgagor without the consent of the party secured.—*Bergen v. Bennett,* 1 Caines, Cas. (N. Y.) 1, 2 Am. Dec. 281; Code, § 4896; 27 Cyc. pp. 1452, 1453; *Tarver v. Haines,* 55 Ala. 503; 2 Perry on Trusts, 602h.

The foreclosure under the power of sale of the mortgages confessedly not wholly satisfied, and full tender not having been made to that end, was valid, passing the unqualified title, though effected after the bill to redeem was filed. These mortgages were executed by the complainant before his marriage; and hence bore the full security the land afforded, free from the charge or claim of homestead exemptions. The subsequent marriage of complainant could not impair that security in value or character in any degree.—*McGill v. Hughes,* 84 Ark. 238, 105 S. W. 255.

The letter of February 14, 1908, was an unequivocal admission, not only of an indebtedness secured by the mortgage, but of a specified amount; and upon the faith of that adjustment forbearance was accorded him by the respondents. There is no impeachment of the binding quality of this adjustment of the account between the parties. No vitiating fraud or mistake is shown by the preponderance of the evidence, if it had been sufficiently averred in the pleading. Such an adjustment will not be reopened except for fraud or mistake.—*Ga. Home Ins. Co. v. Warten,* 113 Ala. 479, 22 South. 288, 58 Am. St. Rep. 129; *Sloan v. Guice,* 77 Ala.

394; *Kilpatrick v. Henson,* 81 Ala. 464, 1 South. 188. If the sum stated in the letter expressing the adjustment of the mortgage debt and reciting the extension of the time for payment of the mortgage debt was erroneous as the result of the misapplication of payments to items of indebtedness to which, if unagreed to, the law would not have applied them, the correction could not be made without impeaching the adjustment; and this neither the pleadings nor the evidence will allow on the record here.

The amount for which the property was sold at the foreclosure sale was the sum agreed to in the letter of February 14, 1908, with interest and costs incurred in effecting the power of sale in the mortgages.

Pretermitting consideration of the equitable set-off in the cross-bill, we see no ground on which to base a finding of error in the decree appealed from. It is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sittting.