(78 South. 196)

THOMPSON v. ATCHLEY. (8 Div. 20.)

(Supreme Court of Alabama. Dec. 20, 1917. Rehearing Denied March 23, 1918.)

1. MORTGAGES ⊛⇒334 — FORECLOSURE BY SALE—SUBORDINATION TO EQUITY—SUIT TO REDEEM.

Right to exercise power to foreclose a mortgage by sale is postponed or subordinate to the equity to redeem put into effective motion by the filing of bill to redeem.

2. PRINCIPAL AND AGENT ⊛⇒14(1), 23(1) — CONTRACTUAL MATTER—PROOF.

Agency is a matter of contract; its existence may be implied; and proof of its existence may be made through circumstances surrounding the parties and their conduct as well, unless it is a character of agency required to be constituted by a writing.

3. PRINCIPAL AND AGENT ⊛⇒22(2)—PROOF—DECLARATIONS OF AGENT.

Where an asserted agency rests in parol, and there is other evidence tending to show the fact of agency, the declarations of the alleged agent are admissible.

4. PRINCIPAL AND AGENT ⊛⇒1—"AGENCY."

The distinguishing features of "agency" are representative character and derivative authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Agency.]

5. PRINCIPAL AND AGENT ⊛⇒24 — EXISTENCE OF RELATION—QUESTION OF FACT.

Where the evidence as to the existence of agency is in dispute, or reasonable adverse inferences from evidence are deducible, the solution of the question of agency raises an issue of fact.

6. PRINCIPAL AND AGENT ⊛⇒108(2)—POWER OF ATTORNEY—AUTHORITY TO LOAN.

Where a power of attorney, executed by a mortgagee to the attorney at law who negotiated the loan, constituted such attorney the mortgagee's attorney to receive and hold in charge notes and mortgages turned over to him for collection, to collect interest, also to collect all mortgages and notes when due, giving receipt, etc., such power of attorney did not authorize the attorney to loan money for the mortgagee without her consent, nor authorize him to engage for the mortgagee to discharge an obligation of her debtor to a third person out of funds derived from the loan made by the mortgagor to such debtor.

7. PRINCIPAL AND AGENT ⊛⇒123(1)—AGENT FOR MORTGAGEE—AUTHORITY—SUFFICIENCY OF EVIDENCE.

In suit to cancel a mortgage, evidence held to show that the mortgagee had conferred on the attorney at law who negotiated the loan authority to render services for her in the lending of money, which, while paid for by the borrower, were of peculiar advantage to her.

8. PRINCIPAL AND AGENT ⊛⇒23(3) — EVIDENCE.

The fact that a mortgagee made the check for the loan payable directly to the mortgagor, not to her agent who effected the loan, and left it with the teller of her bank to be delivered when the duly executed note and mortgage were there presented, and that the mortgagor agreed to pay the attorney for his services in effecting the loan, were merely evidential circumstances, not conclusive as against counter-

vailing evidence of the agency of the attorney for the mortgagor rather than for the mortgagee.

**9. MORTGAGES ☞210 — AGREEMENT TO DISCHARGE PRIOR INCUMBRANCE.**

Where the agent for the mortgagee in executing the loan gave written assurance to the mortgagor that he would retain from the loaned sum an amount sufficient to discharge a prior incumbrance on the mortgagor's land in favor of a third person, such assurance was effective to establish the relative rights of mortgagor and mortgagee, and the obligation of the mortgagee to see that the prior mortgage debt was discharged through seasonable application of the money retained.

Mayfield, Sayre, and Gardner, JJ., dissenting.

Appeal from Circuit Court, Madison County; R. C. Brickell, Judge.

Suit in equity by George D. Atchley against Mary F. Thompson to redeem, and to cancel and surrender a mortgage. From decree for complainant, respondent appeals. Affirmed.

The power of attorney executed by Mrs. Thompson to Petty is as follows:

State of Alabama, Madison county. Know all men by these presents, that I, Mary F. Thompson, of Madison county, Ala., do hereby constitute Turner Petty, of Madison county, Ala., my true and lawful attorney for and in my behalf to receive and to hold in charge any or all of my notes and mortgages which I may turn over to him, for the purpose of collecting, and he shall collect, the interest on same, and give receipts for same, or in my absence sign my name by him as attorney as I may direct. Said Turner Petty is to give written receipts to Mary F. Thompson for all papers delivered to him. Also to collect all mortgages and notes when due, giving receipt therefor, and have the power of attorney to mark said mortgage or note paid in full, and in my absence to cancel the mortgage on the record at the courthouse, and wherever else they may appear on record, giving said Turner Petty the power, in my absence, to set aside such mortgages as fully and completely as though I had marked them satisfied myself in person. This power of attorney is given for the express purpose of giving the said Turner Petty the power and authority, as I may advise, to collect any or all mortgages and notes that may become due to me from time to time, and to receipt for same, and to mark them satisfied as above stated. I, Mary F. Thompson, do hereby ratify and confirm whatsoever my said attorney may do in the premises, according to contract. Given under my hand and seal this the 1st day of August, 1912.

W. F. Esslinger and Betts & Betts, all of Huntsville, for appellant. David A. Grayson and James H. Ballentine, both of Huntsville, for appellee.

McCLELLAN, J. At the time this bill was filed by Atchley (appellee) against Mrs. Thompson (appellant) there was an outstanding unforeclosed mortgage on appellee's lands in Madison and Marshall counties to secure appellee's note to appellant for $3,000.

[1] Redemption, under the equity to that end, was the original bill's object, together with the cancellation and surrender to appellee of an elder mortgage on the land given by the appellee to Mrs. Humes, which the appellant had caused to be transferred to her. Subsequent to the filing of the bill, the appellant proceeded to foreclose her mortgage under the power of sale therein provided; but, according to the authority of Carroll v. Henderson, 191 Ala. 248, 68 South. 1, the right to exercise the power to foreclose by a sale is postponed or subordinate to the equity to redeem, put into effective previous motion by the filing of the bill to redeem. The writer entertained and set down a different view (Presnall's Case, 181 Ala. 263, 270, 61 South. 804; Carroll v. Henderson, 191 Ala. pp. 253–258, 68 South. 1); but the decision of the court was as stated, and its rule must be here observed and applied, to the end that the appellee's right to redeem under his equity, not in virtue of the system provided for statutory redemption, is clear and is to be given effect.

F. T. Petty was a practicing attorney at Huntsville, who made loans of money of others on mortgage, and Mrs. Thompson also resided there. Previous to March, 1915, appellee had executed to Mrs. Humes a mortgage on his land to secure a note for $1,500. Appellee approached Petty for a loan, and during the interview Petty advised appellee that appellant had money appellee could borrow on his land, if the title was good; but that appellant would not take a second mortgage —a mortgage subordinate to that held by Mrs. Humes. The loan of $3,000 to appellee from appellant was agreed upon between Petty and appellee, without consultation or communication between appellee and appellant; the appellee promising to pay Petty $100 for his services in the premises, to be deducted by Petty from the sum so borrowed. Petty investigated and approved appellee's title to the lands, drew the appellee's note and mortgage to appellant for the loan, and turned them over to appellee for execution by his then absent wife. It was agreed by Petty and appellee that Petty should deduct from the loaned sum the amount, among others, of Mrs. Humes' mortgage debt and interest and discharge Mrs. Humes' debt, thus, in consequence, relieving the land of the mortgage prior to that of appellant, and pay to the appellee the net difference between the indebtedness of and charges against the appellee and the $3,000 so borrowed. A short time subsequently, the appellant delivered her personally signed check for $3,000, payable to appellee, to the teller of the bank with which she did business in Huntsville, directing him to deliver the check to appellee when the teller received from him the properly executed note and mortgage for the loan. This check was delivered and later cashed, and the appellee's note and mortgage were delivered to the teller, and subsequently these papers were turned over by the teller to the mortgagee, the appellant. Appellee denied the delivery of the check to him or to any

one for him, and also denied the indorsement of the check, which indorsement was in the name of the payee in the check, the appellee mortgagor.

While the evidence is conflicting, at least in degree, on the issue whether the appellee received or indorsed the check or was present in the bank with Petty when the teller parted with the possession of the check, yet, after a careful review of the whole evidence relevant to this issue, particularly these features of evidence—the signature as of appellee on the back of the check and on other original papers certified to this court—our opinion is that the clear preponderance of the evidence is to the effect that appellee did not himself receive the $3,000 check from the teller and did not himself indorse the $3,000 check. According to the effect of the evidence, the only check relating to this matter appellee received was one for $777.24, payable to appellee, signed by Petty individually, of date April 17, 1915, and marked (stamped) paid on April 20, 1915, bearing this notation, "For Mrs. Mary F. Thompson, loan in full.". This check's amount represented the difference, before mentioned, between the sum of the loan, viz. $3,000, and the aggregate of appellee's then indebtedness and the charges the appellee agreed to pay. Undoubtedly, the amount of the Humes mortgage debt was a factor in the calculation which gave the net difference represented by the check for $777.24. At the time Petty gave appellee this check for $777.24, Petty also gave the mortgagor appellee the following writing, signed for Mrs. Thompson, the mortgagee, by Petty, attorney:

"This is to certify that on the mortgage of George David Atchley to Mrs. Mary F. Thompson, amounting to $3,000, of date March 31, 1915, the prior mortgage of $1,500 and one year's interest, making a total of $1,620, is a part of the said $3,000, and is to be taken care of and to be paid by Mrs. Mary F. Thompson. this the 31st day of March, 1915. [Signed] Mrs. Mary F. Thompson, by Turner Petty, Atty."

About 15 months later Petty absconded. The mortgage held by Mrs. Humes was not paid, as the quoted writing assured it would be paid, out of the funds retained by Petty for the purpose. Subsequently, Mrs. Thompson caused the Humes mortgage to be transferred to her, and relies upon it as an outstanding obligation against appellant and a charge upon his lands. As appears, a vital question in the cause is whether Petty was Mrs. Thompson's agent or Atchley's agent in respect of the application of the money so retained to the discharge of the Humes mortgage debt, with the result to attend that, if Petty was Mrs. Thompson's agent in that particular, Atchley's only obligation under his mortgage to Mrs. Thompson was and is to repay the $3,000 and interest, whereupon Atchley was and is entitled to have the Humes mortgage canceled and surrendered to him by Mrs. Thompson, who now holds it

as assignee of Mrs. Humes; and, on the other hand, if Petty was Atchley's agent in that particular and failed to perform the service Atchley commissioned him to perform, Mrs. Thompson was not then and has not since been concerned in the default of Petty in respect of his agency for Atchley.

[2-4] Agency is a matter of contract, and its existence may be implied. Proof of its existence may be made through circumstances surrounding the parties and their conduct as well, unless it is a character of agency required to be constituted by a writing. Where the asserted agency rests in parol, and there is other evidence tending to show the fact of agency, the declarations of the alleged agent are admissible. Robinson v. Greene, 148 Ala. 434, 43 South. 797; Miller-Brent Lumber Co. v. Stewart, 166 Ala. 657, 51 South. 943, 21 Ann. Cas. 1149. The distinguishing features of agency are representative character and derivative authority. 1 Mechem on Agency (2d Ed.) § 26.

[5, 6] Where the evidence is in dispute, or reasonable adverse inferences from evidence are deducible, the solution of the question raises an issue of fact. 1 Mechem, § 300. It appears from the evidence that Petty had been long in the habit of passing upon the security for loans of money belonging to Mrs. Thompson, of viséing the title to lands proffered as security for loans of her money, of collecting debts due her, and of entering upon the margins of the records the satisfaction of mortgages held by her. On August 1, 1912, Mrs. Thompson executed a power of attorney to Petty. The report of the appeal will contain it. This instrument was recorded in the probate office of Madison county on August 15, 1912. It appears that even after the date of the execution of the mortgage here in question by appellee to appellant, Petty did an act that was within the purview of the authority conferred by this power of attorney.

"Powers of attorney are, ordinarily, subjected to a strict construction; or, rather, the authority given is not extended beyond the meaning of the terms in which it is expressed." Brantley v. Ins. Co., 53 Ala. 554, 557; 31 Cyc. p. 1407 et seq.

This instrument did not itself authorize or empower Petty to loan money for Mrs. Thompson without her consent, nor authorize or empower Petty to engage for Mrs. Thompson and to oblige her to discharge an obligation of her debtor to a third person out of funds derived from a loan made by Mrs. Thompson to such debtor. We are unable to see that this instrument had or has any bearing upon the main issue presented in this cause. If appellee read this instrument on the records of Madison county before he made the agreement whereby Petty was to retain of the $3,000 loan, the necessary amount to pay the Humes mortgage, he could not have acquired therefrom any information that the instrument conferred upon

Petty authority to engage as he (Petty) undertook to do.

[7, 8] But, aside from this instrument, it seems from the whole evidence to be reasonably certain that Mrs. Thompson had conferred on Petty authority to render services for her in the lending of money which, while paid for by the borrower, were, in fact, of peculiar advantage to her. State v. Bristol Bank, 108 Ala. 3, 18 South. 533, 54 Am. St. Rep. 141. It is evident that she reposed confidence in Petty's professional judgment and discretion with respect to value of properties offered as security and to the title the borrower had thereto. There are, however, two circumstances related to this loan to appellee that, if considered alone, would require a different conclusion from that just above indicated. They are: (a) That Mrs. Thompson made the check payable direct to the borrower, not to Petty, and left it with the teller of her bank to be delivered when appellee's duly executed note and mortgage were there presented; and (b) that the borrower, appellee, agreed to pay Petty for his services in effecting the loan. Both of these circumstances are but evidential in character and effect. They have been considered in connection with other evidence in the cause bearing upon the issues. Upon such consideration, our conclusion is that other evidence in the cause neutralizes the effect of these two circumstances, that would, if unimpaired in probative force by other evidence, require the conclusion that Petty was the agent of the borrower and not the lender.

There was no stipulation that Petty was to be, or was, the borrower's agent, as was the case in several of the decisions noted on the brief for appellant. The source of this borrower's compensation of Petty was predicated of the effectuation of the loan, and not independent of its effectuation. Mrs. Thompson had been in the habit, with perhaps occasional variations, due to her inspection of proffered land securities to ascertain their values, of lending on Petty's recommendation, where the values and titles were satisfactory to Petty, the remaining condition precedent thereto being that Mrs. Thompson had funds at the time to make the loan. In passing upon the title and value of proffered security Petty, in whom Mrs. Thompson reposed the confidence and reliance indicated, undoubtedly rendered service of peculiar advantage to Mrs. Thompson, though, of course, his approval in these respects of the security ultimately inured to the benefit of the proposed borrower. If Petty had purposely or negligently induced Mrs. Thompson to lay out her funds on property the title to which was bad, it is not reasonable to suppose that Petty could have answered and defeated her action for damages on any theory that would have negatived his relation of agency to Mrs. Thompson as his principal, and so for the evident reason that the fidelity to the confidence thus reposed by Mrs. Thompson

was manifestly inconsistent with the interest of the proposed borrower.

It appears with all certainty that the title Mrs. Thompson required was an unincumbered title. Petty, of course, knew this and so advised appellee. Appellee wanted the loan, and had property of a value adequately to secure the loan of a sum sufficient to discharge the prior incumbrance of Mrs. Humes' mortgage. Petty exacted the discharge of that incumbrance as a condition precedent to the effectuation of the loan to appellee. The existence of that prior incumbrance was an obvious obstacle to the clear title Mrs. Thompson required, and which she relied upon him (Petty) to see was afforded her through the security prepared by Petty. Her direction to the teller of the bank to deliver the check when the papers Petty had prepared were delivered to the teller furnishes unmistakable evidence of her complete reliance upon Petty to guard and conserve her interest—not that of the borrower to whose interest in respect of title her interest was undoubtedly opposed—in making the loan to appellee. So, when Petty and appellee agreed that Petty might retain an amount sufficient to discharge Mrs. Humes' prior incumbrance, he was providing in the most practical and certain way, through the interception of the money loaned by appellant to appellee, to assure appellant an unincumbered title under appellee's mortgage with appellant's authority to, and reliance upon, him (Petty) to see that she was afforded an unincumbered prime security. The fact that appellant did not (if so) at all compensate Petty for this service is, as stated, but an evidential circumstance insufficient in probative force to overcome countervailing evidence. Petty's compensation was provided for, according to the custom, out of the very subject of the loan, not through or in consequence of appellee's agreement to compensate Petty if the loan was not secured. Petty was assured his fee if the loan was made, and neither party became obligated to pay him otherwise. The loan could not be made unless an unincumbered title was assured, and the existence of this condition Mrs. Thompson committed to Petty to determine in her peculiar behalf.

[9] Hence we hold, as did the court below, on the evidence disclosed by the record, that, in engaging with appellee to retain from the loaned sum an amount sufficient to discharge the prior incumbrance in favor of Mrs. Humes, Petty was the agent of Mrs. Thompson, and the written assurance given by him to appellee was effective to then establish the relative rights of these parties and the obligation of Mrs. Thompson to see that the Humes mortgage debt was discharged through seasonable application of the money retained by Petty, wherefrom it results that Petty's infidelity is ascribable to his principal, and entitled the appellee (complainant) to the cancellation and surrender of the

201 Ala.—26

Humes mortgage, and the effectuation of appellee's right to redeem under his equity to that end; all as correctly pronounced in the decree from which this appeal is prosecuted.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur. MAYFIELD, SAYRE, and GARDNER, JJ., dissent.

MAYFIELD, J. (dissenting). The doctrine is thoroughly established, and it has been repeatedly held in this state that where a person who desires to borrow money applies to an attorney or a money broker to procure a loan for him, and pays, or agrees to pay, such attorney or broker anything for his services, this constitutes the attorney or broker quoad hoc the agent of the borrower, and not of the lender, though it be a part of the business of the attorney or broker to lend money, and he has, on other occasions, lent moneys of the lender; and so, even where the lender has placed his money in the hands of the broker to be so lent. American Mortgage Co. v. King, 105 Ala. 358, 16 South. 889; Edinburgh, etc., Co. v. Peoples, 102 Ala. 241, 14 South. 656; Ginn v. New England, etc., Co., 92 Ala. 135, 8 South. 388; Allen v. McCullough, 99 Ala. 612, 12 South. 810; George v. New England, etc., Co., 109 Ala. 548, 20 South. 331; Land Mortgage, etc., Co. v. Preston, 119 Ala. 290, 24 South. 707.

A well-established exception to the general rule that a principal is chargeable with constructive notice of facts known to the agent, or of which he has notice, is that if the agent in the particular matter is then in fact acting for himself, and intends to perpetrate a fraud on the principal or on other persons, for his own benefit, and the communication of the fact to be imputed would necessarily prevent the consummation of the fraud intended, then the principal is not chargeable with constructive notice. Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736; Reid v. Bank, 70 Ala. 199; Innerarity v. Bank, 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710; Dillaway v. Butler, 135 Mass. 479; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; Allen v. South Boston R. R. Co., 150 Mass. 200, 22 N. E. 917, 5 L. R. A. 716, 15 Am. St. Rep. 185. In the last-cited case the reason for the rule is thus stated:

"There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent. It may be doubted whether the rule and the exception rest on any such reasons. It has been suggested that the true reason for the exception is that an independent fraud, committed by an agent on his own account, is beyond the scope of his employment, and therefore knowledge of it, as matter of law, cannot be imputed to the principal, and the principal cannot be held responsible for it. On this view, such a fraud bears some analogy to a tort, willfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master. Whatever the reason may be, the exception is well established."

The case nearest in point, and the best-reasoned case, is from the Georgia court, the opinion being written by Justice Lamar, late of the Supreme Court of the United States. The headnote well states the decision which is as follows:

"1. Where an agent is guilty of an independent fraud for his own benefit, and to communicate the same would prevent the accomplishment of his fraudulent design, the principal is not charged with notice of such misconduct.

"2. A. could read and write, but was inexperienced in business. B. had been her attorney, and she owed him $50. At his request, and to enable him to raise the money, A. agreed to give a note therefor. The agent fraudulently made a note for $500, instead of $50, and procured her to sign it. The note was made payable to X., who had money to lend and who was a client of B. The money was advanced on the note to B., but none was paid over by him to A. Held, that the lender was not charged with notice of the agent's fraud."

This decision was approved by Mr. Mechem in his work on Agency. See vol. 2, § 1838, and notes.

A lender can never be chargeable with notice of the fraud, or with the fraud, of one with whom he agrees to lend money to a third party, under the facts and circumstances shown by this record. The law as to commercial paper in such cases must control and fix liability; there is no question of agency. The lender being guilty of no fault or negligence in the making or delivering of the check, he cannot be held liable if the bank pays it to a person not entitled to receive it.

The foregoing are the views of the writer, expressed in the concurring opinion in the case of Robertson Banking Co. v. Brasfield (2 Div. 639) 79 South. 651.

Mr. Justice SAYRE concurs in the views of the writer.