McGILL et al. v. McGILL.
THOMPSON et al. v. McGILL et al.

Nos. 29287, 29286. April 29, 1941.

113 P. 2d 826.

I. C. Saunders, of Shawnee, and A. B. Carpenter, of Roswell, N. M., for plaintiffs in error Emma Thompson et al.

Thos. J. Horsley and Hicks Epton, both of Wewoka, for Lizzie McGill.

W. A. Chase, of Tulsa, Allen G. Nichols, of Wewoka, and Ramsey, Martin & Logan, and Tom Finney, all of Tulsa, for defendant in error H. R. McGill.

HURST, J. Emma Thompson and others brought this action against defendants Lizzie McGill and H. R. McGill to establish a trust in land in Seminole and Pottawatomie counties, and to quiet their title to the interests claimed by them therein. The trial court denied the relief sought, and adjudged H. R. McGill to be the owner of the Seminole county land, and Lizzie McGill to be the owner of the Pottawatomie county land. Plaintiffs appeal from the judgment, and the guardian of Lizzie McGill appeals from that part awarding title of the Seminole county land to H. R. McGill, and holding a certain deed from Lizzie McGill to him, dated March 3, 1926, a valid conveyance. Each appeal was separately docketed under the above numbers.

The plaintiffs and guardian of Lizzie McGill contend that the signature of Lizzie McGill to the deed to H. R. McGill was a forgery, and, also, that on March 3, 1926, the date of said deed, she was mentally incompetent to make such a deed. In view of our decision on the first contention, it is unnecessary to consider the second.

1. The guardian of Lizzie McGill contends that she was not properly served with process. This contention is based upon the fact that the summons served

on her was directed to the medical superintendent of the state hospital for the insane in which she was confined. The guardian argues that it should have been directed to the sheriff of the county in which the institution is located, as required by section 166, O. S. 1931, 12 O. S. A. § 153. But section 171, O. S. 1931, requires the summons to be served by the officer to whom it is directed, and section 168 provides that it shall be served and returned by the officer to whom it is delivered. These sections are a part of the general law. By section 5029, O. S. 1931, 35 O. S. A. § 86, it is provided that any process required by law to be served on an inmate of a state hospital for the insane shall be served only by the medical superintendent in charge, or by some one designated by him, and the return thereof shall be made by the person making such service, and that such service and return shall have the same force and effect as if made by the sheriff of the county.

We think section 5029 provides a legal and special method of service upon inmates of such hospitals, and that the direction of the summons to the medical superintendent charged with the duty of serving it was proper. Otherwise lawful service upon such inmate would be impossible, for the summons could not be served and returned by the sheriff if it was directed and delivered to him. To comply with one statutory provision would necessarily violate another. We find nothing in Wilson v. Grant, 79 Okla. 132, 191 P. 1040, relied on by the guardian, which supports his contention.

2. Plaintiffs and Lizzie McGill are the heirs of Louvina Jefferson, who died on August 26, 1919, seized and possessed of the lands in controversy. The defendant Lizzie McGill was appointed administratrix of the estate of Louvina Jefferson. It appears that the tract of land in Seminole county had been mortgaged previous to the death of Louvina Jefferson, and that Lizzie McGill, as administratrix, made several efforts to sell both tracts through sale proceedings in the county court of Pottawatomie county (in which court the administration proceeding was pending) for a sum sufficient to pay off the mortgage and the other indebtedness against Louvina Jefferson's estate, but was unable to do so. Thereupon, by personal solicitation and by letters written by the attorney representing her as administratrix, she requested plaintiffs to convey their inherited interest in said lands to her. The reason assigned for the making of such conveyances was that if the title to said lands was vested in her individually, she would be enabled to dispose of them to greater advantage, and would probably be able to sell them for more than enough money to pay the mortgage and other indebtedness of the estate, and that in such case the balance remaining after the payment of such indebtedness would be prorated among the heirs of Louvina Jefferson, in proportion to their interest in the lands. Pursuant to this plan the plaintiffs, in February, 1923, conveyed their interests to Lizzie McGill. A release of the mortgage on the Seminole county land, dated May 8, 1923, was introduced in evidence by H. R. McGill. Another release of the same mortgage, dated November 8, 1926, was introduced by plaintiffs. Neither of these releases was recorded.

The deed to H. R. McGill purported to have been executed by Lizzie McGill, at Tulsa, on March 3, 1926. H. R. McGill was the husband of Lizzie McGill at the time of the death of Louvina Jefferson. He divorced her on April 15, 1927. He contends that Lizzie McGill paid off the mortgage, and other indebtedness of the estate of Louvina Jefferson, out of her own private funds, and that she was greatly worried for fear the lands of the estate, which appear to have been its sole asset, would not sell for a sum sufficient to reimburse her for the money expended. To assuage her anxiety and distress of mind, he says he paid her some $1,750 for the Seminole county land. In support of his contention he produced checks showing the payment to her of $1,000 on October 1, 1925,

$500 on December 21, 1925, and $250 on February 23, 1926. None of these checks bear any notation identifying them with any particular transaction, but all were indorsed by Lizzie McGill. Whether the checks were deposited by her, or what she did with the money, is not shown. McGill says that the sale of the land to him for $1,500 was agreed upon when he gave his wife the $1,000 check, and that the other check for $250 was necessary to enable Lizzie McGill to pay the debts of the estate. His testimony is corroborated by a young lady who at that time roomed at the McGill home. This witness, however, was not disinterested, but was very strongly prejudiced against the plaintiffs and Lizzie McGill, and in favor of H. R. McGill. Plaintiffs and the guardian of Lizzie McGill assert that the $1,750 paid by H. R. McGill to Lizzie McGill was a part of the purchase price of the home in Oklahoma City, which Lizzie conveyed to him on February 3, 1923, for a consideration not shown in the record. McGill produced no evidence tending to refute this assertion, although he was apparently in possession of Lizzie McGill's papers, including her bank books and canceled checks, for he offered in evidence certain checks made by her in payment of debts of the Louvina Jefferson estate.

The contention of plaintiffs and the guardian that the deed of March 3, 1926, is a forgery, is supported by many facts and circumstances appearing in the record. Lizzie McGill became insane, or at least mentally incompetent, in the summer or fall of 1926, and at the time of the trial was confined in the State Hospital for the Insane at Norman, so that her testimony was not available. But from the record it appears that in **January, 1926,** more than three months after the $1,000 check was given to her by McGill, Lizzie McGill, joined by her husband, made an oil and gas lease on the Seminole county land to one McInnis. No consideration was paid by McInnis for this lease, and the testimony establishes that the lease was held by him as agent of Lizzie McGill, so that it might be sold for her benefit if the opportunity was presented. In November, 1926, McInnis sold the lease to Tidal Oil Company for $1,200. This money was received by McInnis, but he testifies that he retained none of it. McGill in his answer admits that it was received by Lizzie McGill.

The record further shows that on August 16, 1930, a pipe-line right of way grant was made to Champlin Refining Company granting a pipe-line right of way across the Seminole county land. It was signed by H. R. McGill and beneath his signature appears what is admittedly the forged signature of Lizzie McGill.

The record further shows that on June 5, 1931, an oil and gas lease covering the land was made to Ralph Dillenback of Tulsa, and was sold by Dillenback to Stanolind Oil & Gas Company. When recorded, this lease recited that the lessors were Lizzie McGill and H. R. McGill, her husband, and bore the signature of Lizzie McGill, which is admittedly a forgery, and underneath such forged signature is the signature of H. R. McGill, which is admittedly genuine. The affidavit of possession accompanying the lease is signed in the same manner as the lease, and the signature of Lizzie McGill thereto is also admittedly a forgery.

McGill's deed, dated March 3, 1926, was not recorded until April 29, 1936, shortly before the filing of this action on May 15, 1936. He testified that the deed was returned to him after it was recorded, and apparently he lost it very shortly thereafter, as he testified that he looked for it after he was notified of the filing of this action, but could not find it. It was, therefore, not available so that the signature purporting to be that of Lizzie McGill could be compared with her genuine signature. McGill was served by publication, and the exact date on which he was notified is not shown, but he demurred to plaintiffs' petition on June 29, 1936, so the deed was evidently lost before that date.

McGill was an oil operator, being treasurer and manager of the Nowata Oil & Refining Company during 1925 and 1926, and from his testimony it appears that he was familiar with oil activities and values in Oklahoma, and with the manner in which lease transactions were handled. When this fact is taken into consderation, his explanation of his failure to record his deed, and to obtain the $1,200 which McInnis received for the lease sold to the Tidal Oil Company, and his account of the sale of the lease to Dillenback, and of the right of way to Champlin Refining Company, in which he implies that the signature of Lizzie McGill to those instruments was forged or caused to be forged by the respective lessee and grantee, are so improbable as to cast grave doubt upon his testimony that at the time those transactions occurred he was the owner of this land. They strongly corroborate Dillenback's testimony that when he approached McGill with reference to obtaining a lease on the land, McGill stated that his wife owned the land, and that the papers would have to go to Oklahoma City for her signature, and that he thereupon turned them over to McGill, who had them executed and acknowledged before an Oklahoma City notary, and then accompanied Dillenback to the bank, where they deposited the lease papers and a draft. The record also shows that some five years after the lease was executed McGill was advised by Dillenback that the fact that Lizzie McGill was insane on the date when the lease was executed had been discovered, and that he then for the first time advised Dillenback that he had a deed from her, and placed it of record. That Dillenback and the agent of the Champlin Refining Company would cause the name of Lizzie McGill to be forged as suggested by counsel for McGill, and as implied by him, is highly improbable.

Although both McGill and the notary public who took Lizzie McGill's acknowledgment to the deed of March 3, 1926, testified that it was executed in Tulsa, the certificate of the notary on the deed recites that the deed was executed in Oklahoma county, in which county the notary had no authority to act. The notary could not explain this recital. She was at the time she claims to have taken the acknowledgment a bookkeeper in the office of Nowata Oil & Refining Company, of which Mr. McGill was treasurer and manager. Her questionable account of accidentally meeting the McGills on the street, and, although she barely knew Mrs. McGill, of having dinner with them and visiting with them that evening, of having her notarial seal in her handbag, and of the preparation and execution of the deed during the course of the evening, is rendered even more improbable by her inability to produce her notary's record, although she testified that at Mr. McGill's request she had examined it, and that its contents so refreshed her recollection that she could remember what Mrs. McGill said to her at and before the time the deed was executed. While she could remember very little as to Mrs. McGill's personal appearance, she testified particularly that Mrs. McGill expressed fear that she would lose the land and was deeding it to McGill to avert that calamity. Her account of the circumstances leading up to and including the execution of the deed is wholly uncorroborated.

To rebut the testimony of McGill and the notary public, plaintiffs produced several witnesses, only one of whom the record shows to be interested in the outcome of the action, who testified that on March 3, 1926, the date of McGill's deed, Lizzie McGill was confined to her home and bed in Oklahoma City by reason of a severe injury due to her falling down a stairway in the home in the month of February, 1926. This evidence is not controverted, except that the young lady who roomed at the home testified that she thought the accident occurred later in the spring.

To offset the weight of this evidence of plaintiffs, and to bolster his own evidence against the subversive effect of

the facts and circumstances above stated, McGill invokes the rule announced in Dyal v. Norton, 47 Okla. 794, 150 P. 703, Fitzsimmons v. Trosper, 167 Okla. 489, 30 P. 2d 693, and similar decisions holding that the evidence to impeach the certificate of a notary public must be clear, cogent, and convincing, establishing the falsity of the certificate to a moral certainty. That rule has no application, however, where, as here, the recitals of the certificate itself established its falsity. See Jones on Evidence (2d Ed.) §§ 1686, 1687; 1 C. J. 886; 18 C. J. 411; Kline v. Mueller, 135 Okla. 123, 276 P. 200; Herron v. Harbour, 75 Okla. 127, 182 P. 243. The impeached certificate was not entitled to any weight as evidence. Oswald v. Newbanks, 336 Ill. 490, 168 N. E. 340.

McGill also relies upon the receipt of rents and the payment of taxes on the land after the date of his deed. But Lizzie McGill became insane shortly thereafter, and as she then had no guardian appointed to manage her affairs, the fact that the rents were received and taxes were paid by McGill is inconclusive, as such acts could just as consistently be ascribed to ownership by Lizzie McGill and agency on his part.

After a careful study of the record, we are convinced that the finding of the trial court that Lizzie McGill executed the deed of March 3, 1926, and its judgment that thereby H. R. McGill became vested with title to the Seminole county land, are clearly against the weight of the evidence.

3. For a defense to the cause of action asserted by plaintiffs, the guardian of Lizzie McGill pleaded the decree of distribution in the estate of Louvina Jefferson, entered May 29, 1926. The decree recites that the two tracts of land are the entire residue of the estate. It further recites that the heirs have sold all the real estate to Lizzie McGill in consideration of her payment of the debts of the estate and assumption of the mortgage against the land. It then sets out the names of those determined to be heirs, and the distributive share of each in the estate, and orders that their respective shares "be, and the same are hereby transferred, vested and assigned and conveyed to the said heirs, as follows, forever." It then again sets out the names and distributive shares of the heirs, and follows with this paragraph:

"To have and to hold the same, together with all and singular the hereditaments and appurtenances thereunto appertaining to the above-named parties, their heirs and assigns forever."

It then recites that the heirs have sold all the land to Mrs. McGill, and that she is the owner thereof in her individual capacity.

Section 1359, O. S. 1931, 58 O. S. A. § 632, provides that in the decree of distribution "the court must name the persons and the proportions or parts to which each shall be entitled, and such person may demand, sue for, and recover their respective shares from the executor and administrator, or any person having the same in possession." It is to be noted that the county court named the persons entitled to share in the estate, and vested in them their proportionate share of the lands, which was all the property of the estate. These shares had theretofore been conveyed to Lizzie McGill in her individual capacity, and were so held by her. We think that by the decree the county court recognized the transaction between the other heirs and Lizzie McGill, and attempted to give it effect. The decree does not assign to, nor vest in, Mrs. McGill the title to the property of the estate. It simply recognizes the title she already had by virtue of the deeds previously made by which the title vested in her in trust. It does not purport to distribute the lands to her, except the portion to which she was entitled as one of the heirs of Louvina Jefferson. We are not impressed with this contention.

4. We think the evidence clearly establishes a resulting trust in Lizzie McGill. The situation of the parties, their relationship, and the trust and confi-

dence reposed in Lizzie McGill by the plaintiffs bring the case within the principles announced in Flesner v. Cooper, 39 Okla. 133, 134 P. 379, and reaffirmed in Tolon v. Johnson, 104 Okla. 201, 230 P. 865; Crane v. Owens, 180 Okla. 452, 69 P. 2d 654, and numerous other decisions of this court. Those cases announced and applied to varying factual conditions the equitable doctrine that "where for any reason, the legal title to property is placed in one person, under such circumstances as to make it inequitable for him to enjoy the beneficial interest, equity will imply a trust in favor of the person entitled thereto." The evidence conclusively shows that because of their trust and confidence in Lizzie McGill plaintiffs deeded their interest in the property to her in order to enable her to realize therefrom at least a sum sufficient to pay the indebtedness of the estate of Louvina Jefferson, and more, if possible, the surplus after the payment of the debts to belong to the heirs of Louvina Jefferson in proper proportion. Their confidence in her honesty was not misplaced, for never, so long as she remained sane, did she disavow the purpose for which she held it. The contention that plaintiffs are precluded from the assertion of their claims by the statute of frauds is, under the authorities above cited, without merit. Nor has there been a repudiation of the trust by Lizzie McGill which would start the running of the statute of limitations. The evidence shows that after she became insane the plaintiffs depended on McGill, who was handling her affairs, to carry out the terms of the trust, and that they paid him the rents and let him handle the land in such capacity, assuming that he would advise them if the purposes of the trust had been fulfilled. This negatives the contention that their claims are barred by limitation. Ludey v. Pure Oil Co., 157 Okla. 1, 11 P. 2d 102.

From the record it is not clear that Lizzie McGill, personally, and H. R. McGill, who acted as her agent until he placed her purported deed to him of record in 1936, received from the property sufficient money to pay the mortgage against the Seminole county land and the debts of the estate of Louvina Jefferson. The record does not disclose the total amount of the allowed claims against the estate, the amount paid to liquidate the mortgage, or the attorney fees paid to Reasor, or the costs of administration. Nor does it fully show the amounts received from the land by Lizzie McGill, and H. R. McGill for her as such agent.

If the plaintiffs and the guardian of Lizzie McGill cannot agree upon the amount, if any, to which she is entitled to fully reimburse her, the trial court should hear additional evidence and determine this question, and if necessary, order the land sold and the proceeds applied in accordance with the purposes of the trust.

Reversed, with directions to proceed in accordance with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. BAYLESS and GIBSON, JJ., absent.