In re CROUCH'S ESTATE.
CROUCH et al. v. CROUCH.

No. 30536. March 24, 1942.

Rehearing Denied June 23, 1942.

*126 P. 2d 994.*

Carey Caldwell, of Vinita, for plaintiffs in error.

J. W. Bashore, of Vinita, for defendant in error.

HURST, J. This case involves a collateral attack upon a divorce decree.

On June 23, 1922, Ester Mouradian filed an action in the district court of Muskogee county for a divorce from Garabed Mouradian on the ground of abandonment for more than one year. Summons was directed to the sheriff of Craig county, who served the same on Mouradian, and the return showing service was filed June 30, 1922. On August 24, 1922, Mrs. Mouradian filed in the divorce action an application to have a guardian ad litem appointed for Mouradian, alleging that he "is an inmate of the State Insane Asylum near Vinita, Oklahoma." On the same day an order appointing Frank C. Crouch guardian ad litem was entered. On September 5, 1922, the guardian ad litem filed an answer denying the charge of abandonment and alleging that Mouradian "was committed to the Eastern Oklahoma Hospital at Vinita, Oklahoma, on or about the 17th day of November, 1917, and ever since has been and now is an inmate of the said institution; that he is now suffering from paranoia, a chronic form of insanity, which is incurable; that he has been informed by the physician in charge of the said institution that he will never be any better than he now is, and, in fact, that he will gradually grow worse." On September 5, 1922, the district court entered a decree of divorce on the ground that "on

or about November 17, 1917, the defendant deserted and abandoned the plaintiff and has since that time lived wholly away and apart from the plaintiff and has not supported her nor has he supported their children nor contributed anything toward their support." On December 24, 1923, Mrs. Mouradian and I. B. Crouch were married and lived together as wife and husband until his death on February 27, 1939. Mouradian died on March 30, 1940. Appellee, as widow of I. B. Crouch, filed an application for a widow's allowance in the probate cause in which his estate was being administered. Walter and Bennett Crouch filed objections to such application on the ground that the said divorce decree was void and that consequently appellee had a living undivorced husband during all the time she lived with I. B. Crouch, that the marriage between her and I. B. Crouch was void, and that she was not the widow of I. B. Crouch and was entitled to no widow's allowance. The county court sustained the objections and denied the claim for a widow's allowance. On appeal to the district court, the judgment of the county court was reversed, with directions to proceed on the theory that appellee is the widow of I. B. Crouch, deceased. Contestants appeal.

The contestants make two contentions: (1) That process can be served on an inmate of a hospital for the insane only by the medical superintendent of such hospital, and that service by the sheriff of Craig county did not give the court jurisdiction of person of defendant in the divorce action; and (2) that insanity is not a ground for divorce, and the court was without power to grant plaintiff a divorce for acts committed while the defendant was insane.

Before considering the contentions above stated, we direct attention to the rule heretofore repeatedly announced by this court, which is also the almost universal rule in this country, that where a judgment of a court of general jurisdiction is attacked collaterally, every fact not negatived by the record

is presumed in support of the judgment, and where the record is silent, it will be presumed that the jurisdictional facts were duly proved. Petroleum Auditors Ass'n v. Landis, 182 Okla. 297, 77 P. 2d 730; Yahola Oil Co. v. Causey, 181 Okla. 129, 72 P. 2d 817; Protest of Gulf Pipe Line Co. of Oklahoma, 168 Okla. 136, 32 P. 2d 42; 34 C. J. 537; 15 R.C.L. 875; 31 Am. Jur. 199; Black on Judgments, § 277; Freeman on Judgments (5th Ed.) § 383; Vanfleet on Collateral Attack, § 805 et seq.

1. The first contention made by objectors is based upon 35 O. S. 1941, § 86, which reads as follows:

"Any citation, order or process required by law to be served on an inmate of the hospitals shall be served only by the medical superintendent in charge thereof or by some one designated by him. Return thereof to the court from which the same issued shall be made by the person making such service, and such service and return shall have the same force and effect as if it had been made by the sheriff of the county."

It is to be noted that by the express provision of said section, the medical superintendent may serve the process himself, or he may designate some one to make such service. The method of designation is not specified. The record in the divorce action is silent on the question as to whether the sheriff of Craig county was or was not designated by the medical superintendent to serve the summons in the divorce action on the defendant.

Therefore, under the rule above announced, it will be presumed that he was so designated, and that when the district court of Muskogee county in its order appointing the guardian ad litem found and held that the defendant had been duly served with summons, and impliedly so held in the divorce decree, it had before it sufficient competent evidence to support such findings.

The objectors cite and rely upon McGill v. McGill, 189 Okla. 3, 113 P. 2d 826, as decisive of this contention. In

that case the summons was directed to the medical superintendent, and a direct attack was made upon the summons by a motion to quash on the ground that it should have been directed to the sheriff of the proper county. We held that to so direct the summons to the medical superintendent was proper. But in that case the question of the method of designation, or the effect of the designation by the medical superintendent of the sheriff to whom the summons was directed, as the person to serve the summons was not involved or considered. We do not consider that case applicable.

We conclude that the contention that the judgment is void for want of jurisdiction over the person of the defendant is not sustained by the record.

2. The objectors contend that the allegations of the answer of the guardian ad litem that defendant was insane, and that he had been an inmate of the insane asylum ever since November 17, 1917, in the absence of a reply, must be taken as true (citing 12 O. S. 1941, § 306) and that the failure to file a reply could not be waived by the guardian ad litem (citing Pfister v. Johnson, 173 Okla. 541, 49 P. 2d 174, 102 A.L.R. 31, and Tanner v. Shultz, 97 Okla. 132, 223 P. 174). They also assert that a divorce may not be obtained from an insane person unless the grounds upon which the divorce is sought occurred or arose before such person became insane (citing Lewis v. Lewis, 60 Okla. 60, 158 P. 368; Powell v. Powell, 18 Kan. 371; 19 C. J. 76). Therefore, they say, the record in the divorce case conclusively establishes that the defendant was insane on November 17, 1917, the date when the abandonment was found by the court to have begun, and that he had been insane ever since.

35 O. S. 1941, § 59, provides that persons who may be received as patients in hospitals for the insane are divided into three classes: (1) Public patients, who are insane persons and are kept and maintained at the expense of the state; (2) private patients, who are in-

sane and are kept and maintained without expense to the state; and (3) voluntary patients, who are not insane and are kept and maintained without expense to the state.

35 O. S. 1941, § 63, provides that such voluntary patients may be received for treatment (a) when there is room for them in the hospital after providing ample accommodation for all public and private patients; (b) when the voluntary patient is mentally competent to, and does, make a written application for admission; and (c) when the written approval of the county judge of the county in which the applicant resides is obtained.

The answer did not allege that defendant was insane on November 17, 1917, the date on which the court found that the abandonment occurred. It alleged that he "is now" (September 5, 1922) insane. Under the rule above stated, that every presumption is indulged in support of the judgment, it will be presumed that at the trial of the divorce action the evidence showed that defendant entered the hospital as a voluntary patient, and that his abandonment of plaintiff occurred prior to his becoming insane.

In view of what we have said, it is unnecessary to determine whether the judgment would be subject to collateral attack if the same had been based upon a mistake of law that an insane person could be guilty of abandonment, or that the summons could have been legally served by the sheriff without appointment by the medical superintendent, and we express no opinion thereon.

Affirmed.

CORN, V. C., J., and RILEY, BAYLESS, GIBSON, and ARNOLD, JJ., concur. WELCH, C. J., and OSBORN and DAVISON, JJ., absent.